THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. THOMAS McFARLAND, *as Administrator of the Estate of Oden Toyne, deceased.*

NO. 50.

1. RAILROAD COMPANY—*Personal Injury—Negligence.* Negligence on the part of the operatives of a railroad-train cannot be presumed from the mere fact that a personal injury was caused by such train to one to whom the railroad company owed no contract duty. To justify a verdict for damages against a railroad company on account of such injury, negligence must be affirmatively proven.

2. ———— *Proof of Negligence.* Proof of negligence need not be made by direct and positive evidence, and may be inferred from other facts which are proven in the case, when such inference is a reasonable and natural one to be made. But presumptions of negligence cannot be based upon mere theories, nor be simply deductions from other presumptions.

3. ———— *Contributory Negligence.* It cannot be held, as a necessary legal conclusion from the facts and circumstances of this case,

that the parents of a child 22 months old were guilty of contributory negligence in not keeping such constant watch and care over it as would have prevented it from getting in the way of danger from a passing train of cars on a railroad running in close proximity to their residence; and the question of contributory negligence was properly submitted to the jury for their determination, under the instructions of the court.

4. ———— *Legal Capacity of Plaintiff to Sue.* Where the plaintiff sues in the capacity of administrator of the estate of a deceased person, and the petition alleges that he was duly appointed as such administrator by the probate court of the county in which the action was brought, and qualified as such, and the answer consists only of an unverified general denial, the legal capacity of the plaintiff to bring the action is conclusively admitted by the pleadings, and the defendant cannot upon the trial question the validity of the plaintiff's appointment.

MEMORANDUM.—Error from Douglas district court; A. W. BENSON, judge. Action by Thomas McFarland, as administrator of the estate of Oden Toyne, deceased, against The Atchison, Topeka & Santa Fe Railroad Company to recover damages for death of plaintiff's intestate. Judgment for plaintiff. Defendant brings the case to this court. Reversed. The opinion herein was filed January 9, 1896.

The statement of the case, as made by GARVER, J., is as follows :

Action brought by the defendant in error as the administrator of the estate of Oden Toyne, deceased, to recover damages for the death of his intestate, which is alleged to have been caused by the negligence of the plaintiff in error in the operation of its trains. The accident occurred August 4, 1889, about five miles east of the city of Lawrence, at a public-road crossing, the railroad running east and west and the public highway north and south. The deceased was a child 22 months old, residing with his parents on a farm, the house being uninclosed and situated about 200

feet west from the crossing. No one saw the child at or near the crossing until after he had been struck by a passing train, nor was there any direct evidence as to how the accident occurred. A short time, probably about 15 minutes, before the train passed, the child, with his twin brother, was playing near the house, and this was the last known of his whereabouts until after he was injured. Within a few minutes after the passing of the train, the two children were found lying from three to six feet apart, 18 to 20 feet north of the railroad-track and on the east side of the public highway. Both children were seriously injured, Oden dying within a few hours after he was hurt. The passing train, was a passenger, going east between 4 and 5 o'clock in the afternoon. The external injuries shown upon the body of the deceased consisted of a cut over the right eye, a fracture of the left arm, and a fracture and dislocation of the left hip, the injury on the head being the probable cause of death. The other child received somewhat similar injuries upon the head, and had a fracture of the right thigh. The jury returned a general verdict for the plaintiff for $1,000, and made special findings of fact, among which were the following:

"14. Did any person or persons see Oden Toyne, or his twin brother, at the place where the accident occurred, at or shortly before it happened, and, if so, state who it was that saw them? Ans. No."

"16. Was not the whistle sounded for the road crossing, by the engineer, where the accident occurred, as the train approached it at that time? A. No."

"17. Was the bell of the engine rung as the train approached the crossing at the time? A. Yes.

"18. Was not the whistle of the engine of that train sounded at an audible distance from the crossing where the accident occurred as the train approached it? A. Yes.

"19. Was not the engineer upon his seat in the cab of the engine looking ahead along the railroad track at and before the time of the accident and as his train approached the crossing where the accident occurred? A. Yes; he was on his seat, but was not looking ahead with proper diligence along the track immediately before and at the time of the accident.

"20. Were not the engineer and fireman of said train both engaged in the proper discharge of their duty as they approached and passed said crossing, and, if not, wherein were they neglecting such duty? A. No; they were not looking ahead intently enough to observe objects upon the track.

"21. Did not the fence running up to the cattle-guard on the west side of this crossing create such an obstruction as might have prevented the engineer and fireman on said engine from seeing a small child, or children, standing on the highway near such fence and within a short distance of the railroad-track? A. Yes."

"23. If you find that the injury to Oden Toyne was caused by the negligence of the defendant, then state the particular act or acts of negligence that caused the injury. A. By not keeping a proper and careful lookout ahead.

"24. Do you find from the evidence where the children were standing at the time they were struck, and whether they were struck by the engine or cars? A. Yes.

"25. If you answer the last question in the affirmative, then state just where they were standing, and whether the engine or cars struck them. A. Standing about the middle of the highway, on the track, between the rails, near the north rail, and were struck by the pilot of the engine."

*A. A. Hurd, W. Littlefield,* and *O. J. Wood,* for plaintiff in error. ●

*Riggs & Nevison,* for defendant in error.

The opinion of the court was delivered by

GARVER, J.: The plaintiff in error contends that the evidence fails to show culpable negligence on the part of the railroad company, and that it does show contributory negligence on the part of the parents of the child injured. The allegations of negligence contained in the petition are of a somewhat general nature, but specifically charge negligence on the part of the employees in charge of the train in failing to give any warning signals of the approach of the train to the crossing, and also in failing to observe the child upon the track in time to prevent the train from running against or over it. The jury found that the bell of the engine was rung, but the whistle not blown, for the crossing, though the whistle was sounded within an audible distance of the crossing as the train was approaching it. It was also found by the jury that the engineer and fireman, while in their proper places, were not looking ahead intently enough to observe the children upon the track, and this failure on their part, in ''not keeping a proper and careful lookout ahead,'' is the particular act of negligence found by the jury as the basis of the plaintiff's right to recover. This finding of negligence, it is claimed, is entirely unsupported by the evidence.

It is evident that the injury complained of was caused by the train. But, outside of mere inferences and conjectures, there is no evidence which shows the proximity of the children to the railroad-track immediately before the train reached the crossing, nor whether they were on, or at the side of, the track when the train struck them. The engineer and fireman both testified that they saw nothing of the children at the crossing, and knew nothing of any one

being struck or injured at that point until the train arrived at Kansas City, when information of the accident was conveyed to them by telegraph. The finding of the jury that the children were standing between the rails and were struck by the pilot of the engine has its support in the testimony of a witness who saw the children as they lay upon the ground, within a few minutes after the accident, and who stated that a straight line drawn from where the surviving child lay through two marks upon the ground, which looked as if the body had struck at those points, and extended in a southwesterly direction, would cross the track at a point where the traveled part of the public highway and the railroad-track intersected each other; that the distance from this point in the center of the track to the first mark on the ground was 13 feet, to the second mark 20 feet, and to where the body lay 31 feet. The children were found lying from three to six feet apart, and about five or six feet west of a board fence which extended north from the cattle-guard on the east side of the public road. There were marks on and near this fence, indicating that, when struck by the train, the deceased child was thrown against the fence and rebounded to the place where he lay. The physician who was called in and who testified as a witness for the plaintiff below gave it as his opinion that the injuries, other than those to the head, were caused by contact with the fence. The evidence also shows that the children, when last noticed at the house, were playing with a small wagon, which was, after the accident, found in pieces and scattered along between the rails at and for some distance east of the crossing. It is, in our opinion, extremely doubtful that the jury drew a correct inference from these facts as to the

situation of the children when struck by the train. There was no mark on or about the engine or cars, or within a distance of 13 feet of where the jury found the children were when struck by the train indicating what position they were in. Even assuming that the two marks upon the ground were made by the body of the surviving child striking at these points, and that the body was thrown in a direct line from the point where it was struck to where it was afterward found, yet there is no more reason to infer that the child, when struck, was at a point on this line between the rails than that it was on the same line outside of the north rail. It is also inconceivable that the pilot of an engine running at a speed of 30 or 35 miles an hour could strike a child without breaking its legs and without leaving upon them any marks of violence ; or that it could be struck with such terrible force and not thrown with greater violence, and in an entirely different manner, from that supposed in this case. The injuries upon the head, the other injuries of the arm and thighs, the marks upon the ground and the absence of injuries to the legs indicate with more reasonableness that they, in some way, were struck by the side of the train as it rushed past them. However, conjectures of this kind are now unimportant, except as they show the danger of a jury being carried away by the sentiment and sympathy aroused by the narrative of such a sad occurrence, and of their failing to weigh the evidence, under the instructions of the court, with that even-handed impartiality and fairness which should prevail in every case.

Is there any evidence to sustain the finding of the jury as to the particular acts of negligence upon which the general verdict was based? The burden of the

proof of negligence rested upon the plaintiff; and, while negligence might be inferred from the other facts which were established by the evidence, it could not be based entirely upon mere presumptions not founded on facts. The learned trial judge very fully and clearly instructed the jury that they could not presume negligence on the part of those in charge of the train from the mere fact that the child was injured, and that the presumption of law, in the absence of evidence to the contrary, was that the engineer and other employees in charge of the train were in the proper performance of their duties. This burden of proof upon the plaintiff, and these presumptions of law in favor of the defendant, were controlling in the entire course of the trial; the verdict and findings of the jury should have been directed and formed by them until they were superseded by evidence which satisfies and convinces. An examination of the record fails to disclose a single line of evidence tending to show that these children should have been seen by the engineer or fireman, if in the proper discharge of their duties, in time to have averted the accident. How close they were to the track, and at what point on the public highway a moment before the train reached the crossing, are left to mere conjecture. On the west side of the highway and extending to within four or five feet of the track was a board fence to obstruct the view of the engineer and fireman, and tending to prevent their seeing a small child on the highway. There is no evidence that they did see them, or that they could have seen them by a careful lookout. Can it be said, under such circumstances, that it may be presumed that the children were on or so near to the track, and were for such a length of time before the train reached them, that the train-

men could and should have seen them in time to have avoided the injury? We think not. It will not do to say, even against a railroad corporation, that the days of pure accident have passed, and that injuries are not sustained except through the culpable negligence of another. This unfortunate occurrence appeals strongly to human sympathies, and invites the aid of the helping hand to alleviate suffering and bereavement; but by no such consideration should the rights of parties be measured in courts of justice. For every wrong there should be an adequate remedy, but for injuries inflicted without wrong there is no legal compensation. The law does not justify the mulcting of a party in damages simply because he may have been the innocent cause of an injury and consequent loss to another. It is true the jury in this case were not concluded by the testimony of the engineer and fireman that they were on the lookout, and did not see the children upon the track or about the crossing; but if their testimony be laid out of the case entirely, there is nothing to show what they did see, or could or should have seen, if at their posts in the proper performance of duty. In that situation the jury should have been governed by the rules of law laid down in the instructions of the court, which required the plaintiff to prove negligence as a basis of a right to recover, and which shield the defendant by the presumption that its employees were in the proper performance of duty and operating the train with due care. Beyond the fact of the injury and the location of the children thereafter, there is no direct proof of any fact tending to show how or why the accident occurred. The inferences drawn from the testimony are, for the most part, based upon other inferences and presumptions which just as reasonably warrant

different conclusions. Mere theories and inferences do not authorize a verdict in a case of this nature, unless they are the only conclusions which can reasonably be drawn from facts proven. (*Carruthers v. C. R. I. & P. Rly. Co.*, 55 Kan. 600, 40 Pac. Rep. 915; *Railway Co. v. Henrice*, 92 Pa. St. 431; *United States v. Ross*, 92 U. S. 281.) As the verdict of the jury was based upon this finding of negligence, we are of the opinion that it is not supported by the evidence, and should have been set aside and a new trial granted. It is not a case of conflicting evidence, but there is an entire absence of evidence to prove the fact found.

Another error assigned is, that the evidence shows contributory negligence on the part of the parents of the children. It is contended that because they lived in such close proximity to the railroad, on which frequent trains were passing every day, the exercise of ordinary care required such watchfulness as would have prevented the children from wandering to or upon the track. We cannot agree with the counsel in this contention. We do not understand that the law is so severe as to require families situated as this one was to surround their infant children with impassable barriers, or to employ a custodian or nurse who would keep them away from danger. While the house and yard were not inclosed with a fence or other obstruction to prevent the children from getting upon the public highway, yet the testimony does not show that they were inclined to wander from home, or were in the habit of going toward the railroad, or that any immediate danger in that respect was to be apprehended. The evidence, we think, shows that these parents were reasonably watchful, and were at this time in the exercise of ordinary care. In any event, we think the evidence shows a case of

such nature as to make the question of contributory negligence a proper one to be determined by the jury. (*Smith v. A. T. & S. F. Rld. Co.*, 25 Kan. 742; *A. T. & S. F. Rld. Co. v. Calvert*, 52 id. 547.)

There is one other matter of which complaint is made to which we will refer before closing this opinion. The petition alleged that the plaintiff had been duly appointed by the probate court of Douglas county administrator of the estate of Oden Toyne, deceased, and that he had qualified as such. The answer in the case was a general denial, unverified. On the trial the railroad company offered to show that Oden Toyne died possessed of no estate either in Douglas county or elsewhere, and that, consequently, the probate court of Douglas county having no jurisdiction or authority to appoint an administrator, the appointment of the plaintiff was void. This offer was refused by the court. We think the ruling was proper. This was simply an attempt to show that the plaintiff did not have the legal capacity to maintain this action, because he was not the administrator of the estate of the deceased. Section 108 of the code provides that all allegations of any appointment or authority shall be "taken as true unless the denial of the same be verified by the affidavit of the party, his agent, or attorney." The allegation of the due appointment of one as administrator of an estate imports something more than the mere fact of his being named as such; it implies legal authority for the appointment, and, when not denied under oath, the trial procceds upon the conclusive admission that the party thus claiming to act by virtue of such an appointment or authority has had the same legally conferred. (*Walker v. Fleming*, 37 Kan. 171; *Rogers v. Coates*, 38 id. 232.) The case of *Perry v. St. J. & W. Rld. Co.*, 29 Kas. 420, to

which we are referred by counsel for plaintiff in error, has no application in this case, for there the validity of the appointment of the plaintiff as administrator was challenged by the pleadings, and was properly made an issue in the case.

Other rulings of the court are complained of in the brief of the plaintiff in error, but as they will probably not arise upon another trial it is not necessary to consider them.

Judgment will be reversed, and the case remanded for a new trial.

All the Judges concurring.