# CHARLESTON

## HANLEY, ADMR., *v.* W. VA. C. & P. RY. Co.

Submitted February 27, 1906.   Decided April 17, 1906.

59 419
60 317
60 579

59      419
f64     288

59      419
e66     421

1.  DEATH—*Action for Damages—Pleading—Admissions.*
    In an action under sections 5 and 6 of chapter 103, Code (1899), for damages for the death of a person caused by wrongful act, neglect or default, a plea to the merits of the action admits the representative character in which the plaintiff sues.  (p. 421.)

2.  PLEADING AND PROOF—*Variance.*
    In such action, a variance between the declaration and the proof, relating alone to the instrument by which a bodily injury was in-

flicted, is immaterial and should be disregarded, when the instrument alleged and the instrument proved are of the same general nature. (p. 423.)

3. DEPOSITIONS—*Seal of Notary.*
A deposition of a witness who resides out of this State, taken out of this State in conformity with section 33, chapter 130, Code (1899), in an action at law pending before a circuit court of this State, may be received, when properly certified under the hand of the notary public before whom it was taken, although not under his official seal, if otherwise proper. (p. 429.)

4. SAME—*Witness Out of State.*
A deposition of a witness taken out of this State, in an action at law pending in a circuit court of this State, may be read upon the trial of such action, if the deposition shows that the witness resided out of this State when it was taken and if otherwise proper, unless it appears that the witness is in this State when the deposition is offered. (p. 429.)

5. DEATH—*Negligence—Burden of Proof—Presumptions.*
This action being founded upon negligence, the burden of proof is upon the plaintiff to show that the defendant has been negligent. Negligence will not be presumed alone from the explosion of a locomotive boiler, in use in lawful business upon the tracks of the defendant. (p. 430.)

6. TRIAL—*Evidence—Motion to Exclude.*
Upon the consideration of a motion to exclude all of the plaintiff's evidence introduced upon the trial of an action, he is entitled to the benefit of all proper evidence so introduced, and to all legitimate inferences of fact which may be drawn therefrom. (p. 430.)

7. EVIDENCE—*Expert Testimony.*
An expert witness may give an opinion, in a proper case, based upon his own knowledge of facts disclosed in his testimony; or he may give an opinion upon the facts shown in evidence, and assumed in a hypothetical question submitted to him. (p. 430.)

8. APPEAL—*Review—Reversal.*
Where the circuit court on motion excluded all of the plaintiff's evidence, directed a verdict for defendant and dismissed the action, and upon writ of error to the judgment it appears that material and proper evidence offered by plaintiff during the progress of the trial was improperly rejected to the plaintiff's prejudice, this Court will reverse the judgment, set aside the verdict, award a new trial, and remand the case. (p. 431.)

Error to Circuit Court, Randolph County.

Action by James Hanley, administrator, against the West

Virginia Central and Pittsburg Railway Company. Judgment for defendant, and plaintiff brings error.

*Reversed. Remanded.*

W. B. MAXWELL and C. H. SCOTT, for plaintiff in error.
C. W. DAILEY, for defendant in error.

COX, JUDGE:

This action of trespass on the case was instituted by James Hanley, administrator of Mrs. Catherine N. Rabbett, against the West Virginia Central and Pittsburg Railway Company, in the circuit court of Randolph county. The plaintiff avers that he is entitled to recover $10,000 damages for the death of Mrs. Rabbett, caused by the explosion of the boiler of a railroad locomotive in use by the defendant upon its tracks in the city of Elkins; and that by the explosion the boiler was rent asunder, and a large piece of the metal thereof hurled upon the residence of Mrs. Rabbett, crashing through it and striking her, inflicting severe and fatal injuries, from which she died. Plaintiff also avers that the explosion was produced by the defective and unsafe condition of the boiler, and by mismanagement by the servants of the defendant. Upon trial before a jury, a motion to exclude all of the plaintiff's evidence and to direct a verdict for defendant was sustained, and the action dismissed. Upon petition of plaintiff, a writ of error was allowed to the judgment.

Defendant contends that plaintiff is barred of a recovery, regardless of his assignments of error, because he offered no evidence to show his due appointment and qualification as administrator. The authority for an action of this kind is found in sections 5 and 6, chapter 103, Code, which in part provide: "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof; then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.

"Every such action shall be brought by and in the name of the personal representative of such deceased person," etc.

The plea entered in this action was not guilty. There was no plea of *ne unques administrator*. The question is: Does the plea to the merits admit the representative character in which the plaintiff sues? Some of the early cases and authorities hold that, where an administrator or executor sues upon a cause of action arising in his own time and not in the time of the decedent, a plea to the merits does not admit the representative character in which the plaintiff sues; and that the plaintiff, notwithstanding such plea, must make proof of such character. 2 Lomax · Executors 612–613; 2 Greenleaf Ev. section 338. This early doctrine seems never to have had the assent of all the early cases. See *Watson* v. *King*, 4 Campb. 272, and *Loyd* v. *Finlayson*, 2 Esp. 564. It seems that necessity for proof of the representative character was never required after a plea to the merits, except where the cause of action arose in the time of the representative, and the representative might maintain the action in his own name without designating his representative character. *Denver etc. Ry. Co.* v. *Woodward*, 4 Col. 1. The tendency of the latest and best considered cases in America is to make no distinction between cases upon causes of action arising in the time of the decedent, and cases upon causes of action arising in the time of the representative, and to hold in all cases that a plea to the merits admits the representative character in which the plaintiff sues. 18 Cyc. 994–6, notes 64 and 65. Whether this be the correct view or not, our case of *McDonald* v. *Cole*, 46 W. Va. 186, lays down the rule, without limitation or qualification, that "where one sues as executor or administrator, or in other representative character, there need be no proof of his appointment or authority unless a plea denies it. A plea to the merits admits the right of the plaintiff to sue as he does." It is true, that case was upon a cause of action arising in the time of the decedent, but the rule mentioned seems to have been announced as general. The opinion in that case says that the plea *ne unques*, etc., is a plea in abatement. If that be true and applicable to all cases, then defendant's contention here must fail for want of such plea. It seems to us that the defendant's position cannot be maintained for the reason, also, that section 6, chapter

103, Code, provides that an action of this character may alone be brought by and in the name of the personal representative. He cannot maintain it in his own name, and no other person can maintain it. In such case, a plea to the merits, even under the early authorities referred to, admits the representative character in which the plaintiff sues. This exact question has been passed upon by many courts of last resort in this country; and universally, so far as we have examined, they hold that a plea to the merits in this kind of action admits the representative character in which the plaintiff sues. *Denver etc. Ry. Co.* v. *Woodward, supra;  Union Ry. & T. Co.* v. *Shacklet,* 119 Ill. 232; *Chicago & Alton Railroad Co.* v. *Smith,* 180 Ill. 453; *Louisville & Nashville Ry. Co.* v. *Trammell,* 93 Ala. 350; *Atchison, T. & S. F. Ry. Co.* v. *McFarland,* (Kan.) 43 Pac. Rep. 788; *Ewen* v. *Chicago & N. W. Ry. Co.,* 38 Wis. 614; *Hodges* v. *Kimball et al.,* 91 Fed. 845. The last case mentioned arose under the Virginia statute, and was decided by the circuit court of appeals of the United States in 1899. The plea of not guilty in this action admits the character in which the plaintiff sues.

Defendant also contends that the plaintiff cannot recover because of a variance between the averments of the declaration and the proof. The exact point of variance claimed is this: The declaration avers that a large piece of metal of the exploded boiler struck Mrs. Rabbett, inflicting severe and fatal injuries, etc. Mrs. Boyd, the only witness on this point, says: "It was the timbers that struck Mrs. Rabbett. I can't remember very clearly, it was such a crash that I don't remember much about it, and at that time I was knocked down myself, and she was lying under the table." It will be observed that the alleged variance does not relate to the cause of the injury, or to the manner in which it was produced, but solely to the instrument with which it was inflicted. If the timbers from the house, loosened by the piece of boiler, instead of the piece of boiler, struck Mrs. Rabbett, still the primary cause of the injury is the same. It is contended that no connection is shown between the timbers which struck Mrs. Rabbett and the piece of boiler. There may be no direct evidence showing the connection, but circumstances and facts are shown from which the connection may legitimately be inferred; and the plaintiff, upon the

motion to exclude his evidence, is entitled to the benefit of all legitimate inferences of fact which may be drawn from the evidence. It is shown that the piece of boiler, weighing about seven tons, crashed through the house of Mrs. Rabbett, partly destroying it and an adjacent house, also belonging to her; and that at the same time Mrs. Rabbett, sitting on a chair in her house, was struck by the timbers. What timbers? It seems to us that it would be legitimate for a jury to infer that the timbers which struck her were the timbers of the house, which was partially destroyed by the crashing through it of the piece of boiler. Upon the subject of variance we are cited to *Hawker* v. *B. & O. R. R. Co.*, 15 W. Va. 628, and *Young* v. *W. Va. C. & P. Ry. Co.*, 42 W. Va. 112. Neither of these cases relate to a variance as to the instrument with which a bodily injury was inflicted. It is conceded by the brief of defendant that it was wholly unnecessary for the plaintiff to allege that either the piece of boiler or the timbers struck Mrs. Rabbett, and that the statement of the cause of action was sufficient without averring the particular instrument which struck her. Having alleged the primary or main act of omission or commission causing the injury, it was unnecessary for the plaintiff to aver the particular facts going to prove negligence. *Snyder* v. *Wheeling Elec. Co.*, 43 W. Va. 661. We have in the case at bar a variance alone as to the instrument. The averment is one which it was not essential to make, and which was not necessary to the statement of the cause of action. Under the general rule, such a variance is immaterial, and may be disregarded as surplusage. 1 Chitty Pl. (11 Am. ed.) 229; *Stevens* v. *Freidman*, 58 W. Va. 79. Mr. Hogg, in his Pl. & Forms, section 137, p. 111, says: "The rule respecting variances may be stated to be: that if the entire averment can be expunged without affecting the right to recover, it need not be proved; but if it cannot thus be stricken from the declaration without getting rid of a part essential to the cause of action, then, though the averment be more particular than it need have been, the whole must be proved, or the plaintiff cannot recover." It has been held from a very early date, even in criminal cases, that an averment descriptive of the instrument by which a bodily injury was inflicted need not be strictly proved, provided it is proved in substance. A vari-

ance in this respect was not considered fatal at common law, in cases where the instrument laid and the instrument proved were of the same nature and character. 22 Enc. Pl.. & Pr. 584. In *People* v. *Colt*, 3 Hill (N. Y.) 432, it was held that an allegation of cutting with a hatchet and proof of shooting with a pistol are not variant. In *State* v. *Dame*, 11 N. H. 271, it was held that an indictment for an assault with a basket knife is supported by evidence of an assault with a basket iron. In *Ryan* v. *State*, 52 Ind. 167, it was held that an allegation that an assault was committed by shooting and striking with a gun and proof of beating with a stone are not variant. Other cases might be cited. See Underhill Crim. Ev., section 314; 1 Whart. Crim. Law 519. In this case, the instrument averred and the instrument proved are of like nature, and the variance is wholly immaterial and should be disregarded.

We will now consider the assignments of error made by the plaintiff. Plaintiff complains because the lower court sustained objections to numerous questions propounded to his witnesses. These questions are embodied in twelve several bills of exceptions. From these bills, it appears that the questions were not answered, and that no statement was made during the trial of what plaintiff expected to prove by the answers to these questions. When the bills of exceptions were signed by the judge in vacation, after the judgment was entered and the term adjourned, the plaintiff's attorney stated to the judge what he expected to prove by such answers, and his statement is incorporated in the bills. It also appears, by a separate bill of exceptions, that after the motion to exclude plaintiff's evidence and direct a verdict for defendant had been sustained, and before the jury had returned its verdict, the plaintiff moved the court to allow him to recall the witnesses to whom said questions had been propounded, for the purpose of taking their statements as to what they would have testified had the objections not been sustained, which motion to recall the witnesses was denied. No statement of what plaintiff expected to prove by the witnesses was made at the time of the motion to recall them. It is contended that the said questions, taken with the facts appearing, show that the questions were relevant to the issue and proper in form; that therefore the answers need not appear; and that

the plaintiff need not disclose what he intended to prove by such answers. The questions, objections to which were sustained, are as follows:

(1) "State what was the condition of this engine, prior to these repairs that rendered it necessary to make these repairs?" (2) "State the condition of the stays and bolts in the piece of the boiler shell of engine No. 19, lying in the house of deceased, I mean soon after this accident. State whether you were able to determine whether or not the stays were recently broken, or whether they or some of them had been broken before the explosion?" (3) "State whether you observed the number, location and condition of the bolts or parts of bolts that were in this part of the boiler shell, and if so what was the condition thereof?" (4) "In your examination of the bolts and stay-bolts in the part of the jacket, or shell, that was in the house of Mrs. Rabbett, did you observe and can you state whether said bolts or stay-bolts were, or any of them were, recently broken by force of the explosion, or whether they had been previously broken; if so, the condition and appearance of said bolts?" (5) "State whether or not any of those bolts, where they connected to the boiler shell, were broken off by you, and if so, state how you did it?" (6) "State whether or not these exposed ends were bright, and bore the appearance of new metal exposed, or whether those ends were discolored, either by corrosion or any other cause?" (7) "That afternoon (Oct. 21st, 1903), state to the jury whether that engine boiler (No. 19) was in ordinary good working order or not?" (8) "State whether as conductor of the crew having engine No. 19 in charge on the afternoon of said explosion, and a few minutes before the explosion, you notified the Superintendent of the Railroad Shops of the defendant that said engine and boiler was out of repair and refused to operate properly, and if so, what was said or done by said Superintendent?" (9) "If you examined or observed the condition of the stays and bolts, with which the jacket of said boiler had been fastened, and observed whether said bolts appeared to have been recently broken, or whether some of them bore the appearance of having been broken or severed prior to the explosion of the boiler,—please state how many and what the condition of the said bolts appeared to be?" 10. "If you examined the

metal of said boiler shell on the side that had been inside, next to the water space, and observed any defects, pits or decayed places therein, please state the nature and appearance of the same?" (11) "Were you present at the premises of Mrs. Rabbett soon after the explosion of the boiler, in Oct., 1903, and examined and observed the condition of the boiler shell on said premises, as to whether said metal had any defects in the metal thereof, such as pits, rust holes, or other defects, please state about it?" (12) "If you made an examination of the stays and bolts that had been used in fastening the said shells of said boiler together, please state whether or not said bolts showed that they had all been recently broken, or whether some of them bore evidence of having been broken or destroyed prior to said explosion, and if so please state how many of said bolts appeared to have been broken, prior to said explosion, and what the indications and appearances were?"

Question (1) was propounded to witness J. W. Poling, whose former occupation was boiler making and whose present occupation is plumbing. This witness worked on repairs to this particular locomotive. The repairs referred to were made three or four years before the witness testified, when he was an apprentice boy, and at a time when he could not be said to have possessed the expert knowledge necessary to qualify him to speak as to the condition of the locomotive. Questions (7) and (8) were propounded to a railroad yard conductor, who was not shown to have had any expert knowledge as to the nature and construction of a locomotive engine and boiler; and while it was proper to prove by him what he did as conductor, having in control this locomotive and its crew, as indicated in question (8), it was not proper, without a showing of expert knowledge on his part, to prove by him whether or not the engine was in good working order. *McKelvey* v. *C. & O. R. Ry. Co.*, 35 W. Va. 500. The objections to questions (1) and (7) should have been sustained, even if the plaintiff had stated what he expected to prove by answers to them. The other questions mentioned relate to the condition and appearance of the piece of boiler at the residence of Mrs. Rabbett as to pits, rust holes, etc., and to the condition of the stays or bolts in such piece of boiler and their appearance as to recent breaks or otherwise. The

plaintiff avers both a defective and mismanaged engine and boiler, and that the engine and boiler were old and worn out, that the stays or bolts thereof were burned in two and broken, and that the metal of the boiler was rotten and not sufficient to hold the bolts and rivets, and that the boiler was otherwise defective. The questions mentioned certainly were relevant to the issue. *Veith* v. *Salt Co.*, 51 W.Va. 96. It is suggested that these questions were propounded to witnesses who were non-experts as to the nature and construction of locomotive engines and boilers, and that answers to these questions would necessarily require expert knowledge in that regard on the part of the witnesses under the rule of *McKelvey* v. *C. & O. Ry. Co.*, *supra*. We cannot say that answers to these questions would necessarily require such expert knowledge. The condition of a piece of metal as to rust holes, etc., and the the appearance of stays or bolts as to recent break, are matters not of expert but common knowledge. It is common, and not expert, observation that recently broken metal presents a bright appearance, while an old break in metal presents a rusty or corroded appearance. The fact that the metal had once been in a boiler did not change its nature as metal, or prevent one from describing its condition and appearance in the particulars mentioned, without having expert knowledge as to the wonderful nature and construction of a locomotive engine and boiler. The fact that these questions were relevant and proper did not relieve the plaintiff from stating to the court what he expected to prove by the answers, as the witnesses did not answer the questions. It may be said that some of our previous cases indicate that the relevancy of the question is sufficient; but this subject has been recently re-examined and reconsidered by this Court in the case of *State* v. *Clifford*, 59 W. Va. 1, in which JUDGE POFFENBARGER delivered the opinion, reviewing the authorities, including our previous cases, and after full and careful consideration it was held that "refusal of the court to permit a witness to answer a question which by its own terms and subject-matter, taken in connection with facts and circumstances already in evidence, shows its relevancy and materiality, is not available as error on a motion for a new trial, if the expected answer of the witness was not disclosed to the court at the time of the ruling. An appellate court, in

reviewing a judgment on a writ of error, cannot assume in such case that an answer favorable to the exceptor would have been given. So much of the decision in *Gunn* v. *R. R. Co.*, 36 W. Va. 165, as conflicts with this principle is disapproved." This principle applies with equal force to the motion to recall the witnesses, no statement being then made of what it was expected to prove by them if recalled. It seems almost unnecessary to notice the fact that the plaintiff's attorney, after the judgment was entered and the term ended, stated to the judge, when the bills of exceptions were signed, what he had expected to prove. This, of course, came too late. Under the circumstances appearing, no prejudicial error is shown in the action of the court in sustaining said objections, or in denying the motion to recall the witnesses.

The plaintiff complains of the rejection of the deposition of W. W. Ensign, taken in Pittsburg, Pa. This deposition appears in full by bill of exceptions. The court at first admitted the deposition, and afterwards, upon objections to the several questions and answers thereof, sustained the objections and rejected the deposition. The defendant made certain general objections to the reading of the whole deposition: first, that it is not under the seal of the notary before whom it was taken. As to this objection, section 33, chapter 130, Code, and *Bohn* v. *Zeigler*, 44 W. Va. 402, are in point. Said section 33 provides: "In any pending case the deposition of a witness, whether a party to the suit or not, may, without any commission, be taken in or out of this State by a justice or a notary public, or by a commissioner in chancery, or before any officer authorized to take depositions in the county or state where they may be taken, and if certified under his hand, may be received without proof of the signature of such certificate." We cannot hold, against the positive terms of this statute, that a deposition which meets the requirements thereof may not be received if otherwise proper.

The second general objection to the deposition is that there was no affidavit that the witness resided out of this State, and that it does not appear from the deposition that the witness did or does now reside out of this State. The deposition shows that the witness resided out of the State when his deposition was taken, on the 14th of January, 1905. It was not

claimed, and it did not appear, that the witness was in this State when the deposition was offered. If the deposition was otherwise proper this objection, as well as the general objection first mentioned, should have been overruled. See *Hoopes* v. *Devaughn et al.*, 43 W. Va. 447; *Abbott* v. *L'Hommedieu*, 10 W. Va. 677; *Taylor* v. *Smith*, 10 Grat. 557; *Pollard's Heirs* v. *Lively*, 2 Grat. 216; *Nuckols, Adm'r.*, v. *Jones*, 8 Grat. 267.

It is contended by defendant that the witness Ensign does not by his evidence show that he is an expert in relation to the nature and construction of locomotive engines and boilers, concerning which he testified. The evidence of this witness shows that he is a mechanical engineer of considerable experience, and when asked, "In the discharge of your duties have you ever had occasion to inspect or do any work on locomotive boilers, and are you acquainted with the mechanism of such boilers?" he replied, "Yes." This witness appears to be qualified as an expert, although he further says that he never inspected locomotive boilers. The weight to be given to his testimony was for the jury. 2 Elliott on Ev. sections 1038–9, 1052; 17 Cyc. 39. An expert witness may give an opinion, in a proper case, based on his own knowledge of facts disclosed in his testimony; or he may give his opinion upon facts shown in evidence, and assumed in a hypothetical question submitted to him. 2 Elliott on Ev., section 1116. This action is founded on negligence. It is the duty of the plaintiff to show affirmatively that the defendant has been negligent. Negligence will not be presumed alone from the fact that the boiler of the locomotive, in use in lawful business upon the tracks of the defendant, exploded. In this respect, the case is governed by *Veith* v. *Salt Co.*, *supra*. See also 3 Elliott on Railroads, section 1299; *Texas* v. *Pac. Ry. Co.*, 106 U. S. 617. We quote from the evidence of the plaintiff as follows: "I didn't notice the actual size of the bolts when new and gone in the construction of this boiler but I did notice that they were broken off and half rotted in."

* * * * "Q. Were there any considerable number and if so about how many of those bolts pulled out or broken out of this shell or jacket of the boiler that was there? A. There was a great many. Q. About how many of such bolts did you observe that were less in size than the uniform size at

the place where they connected with the boiler shell? A. That I answered a minute ago. I said I didn't know exactly how many but some of them were so that I could pull them off. Q. State as near as you can the extent, whether a third or a half or as near as you can state it, that such bolts were reduced in size below the uniform size? A. Well all bolts that are in water—. Q. Just answer the question. A. Where they were connected to the boiler they were reduced quite considerable and had a cast like iron corrodes around those bolts at that time." We also quote from the evidence of witness Bernard, who was a boiler maker, as follows: "Well, I understand that the bolt is in one whole piece that connects the two sheets together, and if that bolt is broken in any place between the two sheets it will corrode on the end, and that was the evidence I have and the only thing I seen that the bolts was corroded on the end." It is claimed that, with this evidence admitted, it was improper to reject the whole deposition. That part of the deposition beginning with question 4 and including the answer to question 6, does not appear to relate to facts which the evidence previously admitted tended to prove, and the rejection of this part was not error to plaintiff's prejudice. This part of the deposition relates principally to the life of a locomotive, and to the time it may be used before it will be unfit for use or repair. No evidence was introduced showing the age of the locomotive in question. The part of the deposition beginning with question 7 and ending with the answer to question 15, should have been admitted, in view of the evidence previously admitted for the plaintiff. This part of the deposition related to the necessity of stays or bolts, and to the effect of broken or defective stays or bolts upon the safety of the boiler, and to the ability of a boiler maker or inspector to detect a broken or destroyed bolt, and to other pertinent matters. The part of the deposition beginning with question 16 and ending with the answer to question 21, does not appear, upon consideration of the evidence admitted, to be relevant, and its rejection was not error. The part of the deposition beginning with question 1 and ending with the answer to question 3, relating to the age, residence and expert knowledge of the witness, should have been admitted.

The part of the deposition offered which should have been

admitted was improperly rejected, to the plaintiff's prejudice; and for this error we must reverse the judgment complained of, set aside the verdict, award a new trial, and remand the cause for further proceedings according to law.   As this case must be remanded for a new trial, we express no opinion as to the sufficiency of the evidence introduced upon the former trial to sustain the plaintiff's case.

*Reversed.   Remanded.*