C. W. DUNCAN, *Administrator, v.* NEW RIVER & POCAHONTAS
CONSOLIDATED COAL COMPANY

(No. 7519)

Submitted November 7, 1933.   Decided November 28, 1933.
(Rehearing denied January 27, 1934)

*Dillon, Mahan & Holt,* for plaintiff in error.
*Hubard & Bacon,* for defendant in error.

KENNA, JUDGE:

C. W. Duncan, as administrator of the estate of Emma Louise Hornsby, in an action for death by wrongful act against New River & Pocahontas Consolidated Coal Company in the circuit court of Fayette County procured a judgment for $4,000.00, based upon a verdict for $7,000.00 reduced by order of the court to the amount of the judgment. To this judgment, the defendant prosecutes this writ of error. Plaintiff below assigns cross-error because of the reduction of the judgment below the amount of the verdict.

Plaintiff's decedent was electrocuted by coming in contact with a wire fence around the property of her husband at or near Minden. The current causing her death had got into the wires of the fence as a consequence of a high voltage wire dropping across it at a point some distance from the place that Mrs. Hornsby was at the time of her death. It is necessary to go into some detail as to the history, ownership, nature and position of the wires serving the plant of the defendant in order to arrive at the legal responsibility for Mrs. Hornsby's death.

So far as the facts of this case are concerned, the Appalachian Electric Power Company has succeeded to all of the rights of the Virginian Power Company. During the War, the high power lines of the latter company extended from its plant at Cabin Creek through Fayette County to Scarbro. The United States Government, as one of its War undertakings, connected with this line at a point near Minden, taking off power at a tension of 44,000 volts to a transformer station at that point. At the Minden transformer, this power was stepped down to 2300 volts, metered and carried beyond to the various operations of the defendant company, the most distant point so served being defendant's shaft No. 5. All

of the line was constructed by the United States Government, the coal company merely making the connections to carry the current from the service line into its various operations. In 1919, the government sold these lines to the Virginian Power Company and they finally became vested in the Appalachian Electric Power Company. In 1926, the defendant company purchased an operation at Kaymoor on the opposite side of New River. Wishing to electrify this plant, it approached the Appalachian Electric Power Company and an agreement was entered into by which, on condition that the defendant would install an additional transformer, the power company would put in three additional lines carrying 6600 volts from the transformer at Minden along the poles of the line that the government had built to the end of that line at or near defendant's shaft No. 5, and would construct new poles carrying the new lines on to Kaymoor. This was done, the heavier voltage lines being carried beneath the 2300-volt line already on the poles erected by the government for the distance that those poles extended. The government had acquired a right of way from William Hornsby and plaintiff's decedent, when it constructed the original line, so that at the time of Mrs. Hornsby's death both the 2300-volt lines and the 6600-volt lines were carried across their property on the right of way her husband and she had granted and across which the wire fence around their property extended.

The evidence shows that for some two to four months before the accident one of the 2300-volt wires had become loose from the cross-arm on one of the poles supporting it near the Hornsby property and at or near the point where the line crossed that property. The peg holding the glass insulator in position on the cross-arm had come loose leaving the insulator swinging to the wire. This caused the line to be unsupported at this pole and for a distance of 253.5 feet between the poles next to the one where the line was loose. It was at or near the pole from which the wire had become loose that the 2300-volt line parted, falling across the 6600-volt line and in turn making contact with the fence around the Hornsby property.

Mrs. Hornsby's death occurred about 2:00 P. M. on the 22nd day of May, 1931. Very shortly before the time of her death, there had been a copious rain accompanied by severe

thunder and lightning. There is no direct proof that these disturbances affected the wire.

In discussing the questions raised, we follow the order of the brief of plaintiff in error, making such other comment as seems justified.

The first assignment of error is that the trial court overruled defendant's demurrer to plaintiff's declaration. This demurrer was general and not in writing. It therefore cannot be considered here. Code, 56-4-36. Plaintiff in error insists that, regardless of demurrer, the declaration is bad because in it nowhere appears the individual name of the administrator of Emma Louise Hornsby. This is true. The declaration avers that the plaintiff sues as administrator of the estate of Emma Louise Hornsby and gives the date on which he was appointed and qualified as such in the county court of Fayette County. No challenge was made in the court below of the fact that plaintiff was the administrator of the estate of Emma Louise Hornsby, neither was the failure to insert the individual name of the plaintiff in the declaration brought to the attention of the trial court in any manner whatsoever. It is urged here that this makes no difference, that the defect rendered the declaration a nullity, and that no proceedings could be had thereon under the authority of *Poling* v. *Moore,* 58 W. Va. 233, 52 S. E. 99. In that case, as appears from an inspection of the printed record, there was an utter failure to designate a defendant in any manner whatsoever. There was no possible way from the declaration to determine who was sued. Here, there is ample averment in the declaration to determine unmistakably the identity of the plaintiff. He is the administrator of the estate of Emma Louise Hornsby. There can be no other. The statute (Code, 55-7-6) provides that actions for death by wrongful act shall be brought by and in the name of the personal representative of the deceased. The purpose of the declaration is to inform the defendant to whom he must answer and for what. We believe that the declaration here substantially serves that purpose. This belief is fortified by the fact that the defendant was not heard to complain of the omission until the case reached this court. There had been a full and fair trial with no complaint on

this account. It has been held by this court that, although the appointment and qualification of a personal representative must be alleged and proven in actions for death by wrongful act, when the defendant appears and pleads to the merits the failure to make this averment is waived. The plea admits the character in which the plaintiff sues. *Hanley, Adm'r.* v. *Railroad Co.*, 59 W. Va. 419, 53 S. E. 625. It is difficult to see why the same rule should not apply to the omission to name the individual who is the administrator, where it substantially appears from the declaration who sues. Here, we must presume that there was a regular praecipe and summons and that the declaration was filed in the action and regularly matured at rules. The declaration is identified by correct indorsement. We have carefully examined the cases of *Harvey* v. *Stokes,* Willes 5, 125 Eng. Reprint 1026; *Alexander* v. *Knox,* 6 Sawy. 54, Fed. Cas. No. 170; *Shackelford* v. *Fountain's Heirs,* (Ky.) 1 T. B. Monroe 252, 15 Am. Dec. 115; *Proprietors of Mexican Mill* v. *Yellow, etc., Co.,* 4 Nev. 40, 97 Am. Dec. 510; *Sherrod* v. *Shirley,* 57 Ind. 17, which, beside *Poling* v. *Moore,* 58 W. Va. 233, 52 S. E. 99, are the only ones discovered that throw light upon the subject. These cases incline toward a technical view of the question, but each is clearly distinguishable from this case. We, therefore, are of opinion that, in accord with the modern tendency to avoid reversals on technical grounds where no prejudice to the party complaining appears, the declaration in this case sufficiently designates the plaintiff to prevent the proceedings in the action from having been a nullity. Hence, while holding our decision in the matter to be strictly limited to the facts as they appear here, we are of opinion that the case should not be reversed on this assignment of error.

Another assignment of error (not argued in the brief, hence not numbered here) is that the trial court erred in not permitting the defendant to file its special pleas Nos. 1 and 2 as a bar to the plaintiff's action and likewise in not allowing the pleas to be filed in mitigation of damages. At common law, anything that can be shown in mitigation of damages is admissible under the general issue and need not be specially pleaded. *Creighton* v. *Board of Water Commissioners,* 143 N. C. 171, 55 S. E. 211, 10 Anno. Cas. 218, and note.

Defendant's special plea No. 1 sets up an action brought by the plaintiff against Appalachian Electric Power Company, a settlement therein under the statute (Code, 55-7-7) allegedly having the effect of a judgment and full satisfaction of that judgment. The plea says that such judgment was a legal adjudication of the amount of plaintiff's damages. The plea seeks to treat this as a bar to plaintiff's *right of action*. Defendant's special plea No. 2 is substantially the same defense, treating the settlement as a satisfaction and release, instead of pleading it as a judgment. It, also, seeks to treat the matter as a bar to plaintiff's cause of action. Neither of these pleas offers matter which bars plaintiff's cause of action. Plaintiff may pursue joint tort-feasors separately to judgment. *Lovejoy* v. *Murray*, 3 Wall. 1; *Griffie* v. *McClung*, 5 W. Va. 131. This was not a legal adjudication of the amount of the plaintiff's damages; in spite of the form that it took under the statute, the proceeding was nothing more nor less than a compromise settlement effected in the statutory form. The rule that the settlement of one judgment against one of several joint tort-feasors releases a judgment against another tort-feasor for the same cause of action, as laid down in *Chewning* v. *Tomlinson*, 105 W. Va. 76, 141 S. E. 532, is therefore not applicable.

The second assignment of error is to the admission of the evidence to the effect that William Hornsby, husband of the decedent, informed one Vernon Miller of the defect in the line. Under the conflicting evidence, it was a jury question as to whether Vernon Miller was such an employee or agent of the defendant as that knowledge to him would put the defendant on notice of the defective condition of the wire. The jury has determined that he was such an employee or agent of the defendant. We think that there is ample evidence in the record to support this finding of the jury. Among other things shown, it was proved that Miller was an electrician of some twenty years experience and looked after defendant's substations at Minden. The jury was justified in concluding that he was held out to the public by the defendant as one who, within the scope of his employment, would receive and act upon complaints as to the condition of defendant's lines.

The third assignment of error is to the refusal of the trial court to permit the defendant below to propound certain questions concerning the delivery point of the electricity. One

of the questions being tried was whether the electricity became the property of the defendant company at the metering point in Minden, plaintiff below taking the position that this was the delivery point and therefore the place at which title was transferred, the defendant taking the position that the delivery did not take place and title pass until the current reached the actual wires of the defendant at its various operations. Under these circumstances, the facts surrounding the delivery of the electricity, from which the jury should have been permitted to draw its own conclusion as to where the delivery point was, should have been fully developed. To ask a witness, under the conditions, where the delivery point of the electricity was, was the equivalent to asking the witness to determine the very thing that the jury was there to determine, i. e., the point of delivery. The questions, therefore, called for conclusions of law, and were properly excluded.

Assignment of error No. 4 relates to instructions Nos. 1 and 2 offered on behalf of the plaintiff and given by the court. Instruction No. 1, in effect, told the jury that if they believed that the electric transmission line which broke was in need of repairs, that the current which killed the plaintiff's decedent was the property of the defendant and under its control, and that the defendant knew that the transmission line at or near the place of the accident was out of repair and in unsafe condition to transmit electricity, that by reason of such condition it fell across the fence charging it with electricity and that plaintiff's decedent was killed by coming in contact with the fence without fault on her part, that then it was the duty of the jury to find for the plaintiff. Defendant complains that there was no evidence upon which this instruction could be given. There was ample evidence tending to show that the transmission line was out of repair before the accident. There was also evidence from which the jury might reasonably find that the current, at the place and time of the accident, was the property of the defendant. The evidence that the fence was charged by the wire falling across it and that Mrs. Hornsby met death by coming in contact with it without fault on her part is uncontradicted. As to the question of control of electricity, the subject swims beyond comprehension. All that the experts seem to know is that within certain

limits, electric power may be guided, and that, subject to certain limitations, its whereabouts may be ascertained and controlled and the dangers incidental thereto safeguarded against. But in the sense of being able to order the power on or off of the lines from Minden to its various plants there can be no doubt that the defendant controlled this power. Its requirements were measured at Minden and it paid for all of the power that passed that point. There were no other customers of the Appalachian Electric Power Company beyond Minden who took power from the lines in question. The coal company could have as much, as little, or, indeed, none at all of it, turned into the lines beyond Minden as it chose. Upon discovery of a defective condition in the line, the coal company itself could cut the power off at Minden, where its own people were in charge of the transformer station. It was charged with the responsibility of doing so if it knew of dangerous conditions in the line. It is perfectly true that the Appalachian Electric Power Company owned the line beyond Minden to shaft No. 5, and that it, too, on that account, had certain responsibilities to discharge with reference to the power transmitted. But this fact did not interfere with the fact that defendant also, from a legal standpoint, might be held to be in control of the power. From the standpoint of safety, the control of electric power is mainly negative. It is the power to prevent it from reaching points where it could do harm. The jury might find from the record in this case that both the Appalachian Electric Power Company and the defendant controlled the current over these lines from that standpoint. We think, too, that there was sufficient evidence for the jury to find that the point of delivery was Minden, where the current was metered for the consumption of the defendant. If the jury did so find, then, the electric current belonged to the defendant beyond Minden, and that part of the instruction submitting the question as to whether the current was the property of the defendant at the time and place that Mrs. Hornsby was killed thereby, was not improper.

As to instruction No. 2, given on behalf of the plaintiff, it seems to us that the reply to the special interrogatory propounded to the jury eliminates the possibility of this instruction being error. It is an instruction having to do with the

negligence of the defendant, acting through Vernon Miller, in closing the circuit breakers which were thrown out at the Minden transformer at or about the time of the electrical storm which immediately preceded Mrs. Hornsby's death. The special interrogatory given to the jury required the jury to state upon what act of negligence they based their finding against the defendant. The reply was that the negligence of the defendant upon which the verdict was based consisted of "* * * operation of defendant company in not ascertaining the safety of the power company lines to convey the defendant company's power from point of metering to point of destination". (We do not wish to be understood as approving the form of this interrogatory nor the reply thereto, but, since there was no objection to either in the trial court, both stand here for what they are worth in this record.) Therefore, since the negligence of Vernon Miller in closing the circuit breakers did not enter into the verdict of the jury, an instruction predicated thereon was not prejudicial.

Assignment of error No. 5 is based upon the failure of the court to give instructions tendered by the defendant. Defendant's instruction No. 1 was the peremptory instruction to find for the defendant. For reasons stated in the discussion of other instructions, we do not regard the court's refusal to give this instruction as having been erroneous. The next failure of the trial court complained of is its failure to give defendant's instruction No. 7, which reads as follows:

"The Court further instructs the jury that, although you may believe the electrical wire which broke in two and fell upon the fence, transmitting electrical current thereto, in which the plaintiff's intestate came in contact, and was killed, had broken loose from the pin upon which it was fastened on the cross-arm by reason of it being rotten or decayed and had been in that condition sometime, yet, if you believe from the evidence that the breaking of the wire, or its being burned in two, at the time of the death of Emma Louise Hornsby, was caused by a wire having been thrown across the same the day before said death and on the day the accident happened, by reason of the burning or defective condition of the wire, made so by the arc caused by throwing the wire across the electrical line, and was on the day of the accident burned in two by a clap of

thunder or bolt of lightning, which was the direct
and primary cause of the breaking of said wire and
causing the same to fall, which resulted in the said
death, then you are instructed that this would be an
accident, caused by the Act of God, and there would
be no liability as a result thereof to the defendant.''

In addition to the fact that neither of the intervening
efficient causes assigned in this instruction is by proof con-
nected with the breaking of the wire sufficiently to warrant
the giving of an instruction based upon either, a reading of
the instruction shows that in assigning the efficient inter-
vening causes depended upon therein to relieve the defendant,
it so confuses them as to make it possible under the instruction
to believe that the act of some one in throwing a wire across
the power line might be the act of God. It is apparent from
a careful reading of this instruction that the giving of it
would have tended to confuse rather than to clarify the issues
before the jury. It was properly refused.

Complaint is also made that it was error for the trial court
to refuse to give defendant's instruction No. 17. This instruc-
tion defines circumstances under which Appalachian Electric
Power Company would be liable to the plaintiff, and then
tells the jury that if they believe those facts, the death of the
plaintiff's decedent would be caused by the negligent act of
the Appalachian Electric Power Company, and the defendant
would not be responsible if they believed ''such was the sole
cause of said death''. Save for the concluding clause, the cir-
cumstances set up in this instruction are entirely consistent
with plaintiff's theory of recovery. Responsibility on the part
of Appalachian Electric Power Company would not relieve
the defendant. The main purpose of the instruction, therefore,
was confusing, and, since that main purpose was the stressing
part of the instruction, we do not believe that its confusing
tendency would be cured by the concluding part of the in-
struction above quoted. The legal proposition advanced by
the instruction is unsound, and the clause at the end does
not sufficiently clarify it. It was not the culpability of another
that was being tried, but the question of defendant's liability.
We think, therefore, that the trial court correctly excluded
this instruction from the jury.

Assignment of error No. 6 is to the failure of the court to set aside the verdict and grant defendant a new trial. This assignment is disposed of by the discussion of assignment No. 5.

The seventh assignment of error urges that the court should have required a remittitur of $6,000.00 against the $7,000.00 verdict because of an alleged settlement between plaintiff and Appalachian Electric Power Company by which plaintiff received the sum of $6,000.00 for the same cause of action alleged here. This settlement for $6,000.00 on the part of the Appalachian Electric Power Company was attempted to be pleaded in bar of the plaintiff's entire cause of action by the defendant's special pleas Nos. 1 and 2. It did not constitute good matter in bar of plaintiff's cause of action. It was not attempted to be pleaded in any other manner, neither was it proven at the trial. The fact that we have held that the trial court was correct in rejecting the two special pleas which tendered the settlement as matter in bar to plaintiff's right of action, and the fact of the settlement having been made not appearing otherwise in this record, except on motion after verdict, place the alleged settlement beyond the scope of this writ of error.

It is true that upon motion to set aside the verdict, or to require a remittitur of $6,000.00, the defendant offered proof of the settlement with the Appalachian Electric Power Company by which plaintiff received $6,000.00. This proof, if proper at all, was proper in mitigation of damages and could have been so introduced under the general issue. It would then have been in the case before the jury. We do not understand that the trial court has any discretion in the matter of rendering judgment upon a verdict of the jury, except in cases of proper remittitur when its action is based upon data and information before it appearing in the record of the case. It may then put the plaintiff upon terms. Based upon proper data, the trial court may offer the plaintiff the alternative of either releasing a part of an erroneously excessive verdict or submitting to having it set aside and a new trial ordered.

In *Cox & Co.* v. *Coal Co.*, 81 W. Va. 555, 94 S. E. 956, 957, Judge Lynch, speaking for this court on the subject of remittitur, said at page 557:

"Necessarily this investigation is limited in scope and only requires us to say whether to set aside part of a verdict and as to such part grant a new trial and enter judgment on the other over the protest and objection of the plaintiff is a proper exercise of the power invested in the trial court, where some doubt may exist whether the evidence clearly is sufficient to support the finding in its entirety; and the determination of this question scarcely needs more than the citation of our own decisions. *Chapman* v. *Beltz & Sons Co.,* 48 W. Va. 632; *Hall* v. *The Philadelphia Co.,* 74 W. Va. 172; *Flannagan* v. *Flannagan Coal Co.,* 77 W. Va. 757; *Watts* v. *Ohio Valley Electric Railway Co.,* 78 W. Va. 144. The basis of these decisions is that an enforced abatement of part of a recovery without a voluntary remittitur and requiring the party recovering to elect to abate is erroneous as an invasion of the province of the trial jury; and point 1 of the syllabus in *Flanagan* v. *Coal Co., supra,* says: 'In no case without such remittitur can the Court of its own motion abate any part of the verdict and pronounce judgment for the balance. Its only course when a remittitur is refused is to set aside the verdict and award a new trial.' "

In *Rodgers* v. *Bailey,* 68 W. Va. 186, 69 S. E. 698, 699, Judge Robinson states at page 189: "Upon motion to set aside the verdict, the court, without a remittitur, reduced the compensatory amount to $400.00 and entered judgment for a total of $800.00. The court could not reduce the finding of the jury, without a remittitur. It could set aside the verdict for excessive damages if a remittitur was not entered." There was no remittitur in this case. A remittitur must be a response to the court's putting the plaintiff upon terms to either submit to a reduction of his verdict, guided by data in the record, or to have the verdict set aside by the court as excessive. Confronted by this alternative, the plaintiff must be left free to choose voluntarily. The court cannot compel him to accept a remittitur. The quantum of damages is for the jury. *Watts* v. *Ohio Valley Electric Railway Company,* 78 W. Va. 144, 150, 88 S. E. 659.

We do not understand that the trial court can put the plaintiff upon such terms in conformity to proof offered after verdict. The theory of remittitur is that *the verdict* is

erroneously excessive and that this fact can be demonstrated by data in the record before the court. If the data showing the need for correction was not in the record before verdict, it cannot be said that the verdict is excessive and erroneous. Evidence introduced after verdict cannot show that the verdict, which is based upon the proof before the jury only, was excessive upon the evidence that the jury considered. Hence, the very basis for remittitur does not exist. The same reasoning would apply to setting aside the verdict. There is no pretense that this is after-discovered evidence, nor is it pretended that there was any reason why it should not have been offered at the trial. To withhold it until after verdict and then tender it as forming the basis of setting that verdict aside as excessive in amount, would but breed confusion and delay in the trial of cases. It would substitute the finding of the judge for that of the jury. We are of the opinion, therefore, that the proceedings by which this proof was attempted to be introduced upon motion to set aside the verdict or upon motion for remittitur cannot avail for the purpose for which the proof was offered or for any other purpose in this case.

The question of whether or not the settlement with the power company may be shown in discharge *pro tanto* of the judgment recovered in the circuit court of Fayette County against the defendant here, when that judgment is attempted to be collected, is not now decided, because it is not before us. We are simply deciding that the matter being set up only in the two special pleas which were properly rejected, and appearing regularly in no manner throughout this entire record, can have no effect whatever upon this case. It has not been properly injected into this case.

Both the plaintiff and defendant in error complain of the remittitur required by the trial court. The plaintiff in error complains because the trial court did not require a remittitur in the sum of $6,000.00. This question has been disposed of heretofore in this opinion. We do not believe that the trial court would have been within its powers under this record in requiring a remittitur in the sum of $6,000.00. The defendant in error, on the other hand, complains because the trial court required him to remit the sum of $3,000.00. This,

obviously, was upon the theory that a recovery in this action of $4,000.00, coupled with the payment by the Appalachian Electric Power Company of the sum of $6,000.00, would make a total of $10,000.00, which is the limit of recovery under the death by wrongful act statute. We do not pass upon the validity of this theory. The error of the trial court here, in any event, was in considering that the settlement with the Appalachian Electric Power Company was before him. We do not believe that it was in this case. It is only mentioned in the two special pleas of the defendant, both of which were tendered in bar and rejected, and upon motion after verdict, which did not affect the question of remittitur. It is true that the plaintiff in error contends that these pleas should have been accepted by the trial court as pleas in mitigation of damages. However, this question does not appear to have been raised when the pleas were tendered. There was no way by which, owing to the form of these pleas, the plaintiff below could join issue upon them as pleas in mitigation of damages. As we have said heretofore in this opinion, matter in mitigation need not be specially pleaded, but may be proved under the general issue. Therefore, since these two special pleas were properly rejected by the trial court, the matter of this settlement with the Appalachian Electric Power Company was not before the trial court for any purpose. It was not proven at the trial. It was not pleaded in any other way. Since, therefore, the matter of this settlement was not in this record, no remittitur could be based upon it. Matter to be available for the purpose of remittitur must appear in the record.

In view of the foregoing, it is our opinion that the trial court erred in not entering judgment upon the verdict of $7,000.00. The judgment of the circuit court of Fayette County will therefore be reversed and the cause remanded with directions that judgment be entered in favor of the plaintiff upon the verdict for $7,000.00.

*Reversed and remanded.*