## GIBBS v. REDMAN FIREPROOF STORAGE CO.

No. 4269.   Decided Sept. 25, 1926.   (249 P. 1032.)

*Stewart, Alexander & Budge,* of Salt Lake City, for appellant.

*Philo T. Farnsworth* and *Stephens, Brayton & Bagley,* all of Salt Lake City, for respondent.

GIDEON, C. J.

In this action appellant (plaintiff below) sought judgment against respondent (defendant below) for the value of a carload of automobile tire casings and tubes claimed to have been placed by appellant in storage in the warehouse of respondent. In the complaint it is alleged that appellant made demand upon respondent for the return of the casings and tubes, and return was refused. At the close of the testimony respondent moved for a directed verdict in its favor. The motion was granted, and from the judgment entered upon the verdict thus rendered appellant prosecutes this appeal.

It is uncontradicted that in March, 1920, appellant Gibbs was doing business in Salt Lake City under the name of Security Sales Company. During that month a carload of automobile tire casings and tubes consigned to the Security Sales Company reached Salt Lake City via Oregon Short Line Railroad, and was stored in respondent's warehouse. The shipment was made by the Victor Rubber Company of Springfield, Ohio. The goods were shipped in compliance with an order given by appellant to the Victor Rubber Company in the fall of 1919. The bill of lading was forwarded

by the shipper to the Security Sales Company at Salt Lake City.

· Respecting the negotiations leading up to the storage of the shipment in respondent's warehouse, there is a sharp conflict ·in the evidence. Appellant's testimony is to the effect that, after the receipt of the bill of lading, and immediately prior to the arrival of the shipment in Salt Lake, he had negotiations with several warehouse concerns, including respondent, with a view of having the shipment stored in some warehouse when it arrived. The conversations claimed to have been had by appellant with the officers of respondent were by telephone. The result of such conversations, as testified to by appellant, was an agreement that, when the shipment arrived, it was to be unloaded by respondent and placed in its warehouse. He further testified that following out that agreement, when the shipment did arrive, respondent called appellant, and requested that the bill of lading be sent to it. Appellant's testimony further is that he intrusted the bill of lading to one Francis, with directions to deliver it to respondent; that at appellant's request respondent advanced the necessary money to pay the freight, and unloaded the car and stored the casings and tubes in its warehouse. Appellant's testimony is further to the effect that on the day the bill of lading was sent to respondent he dictated and had mailed a letter confirming the contract verbally made over the telephone. The stenographer who typed the letter also testified that he wrote the letter at or about the time claimed by appellant. A copy of the letter is in the record. ·Appellant had no further negotiations with respondent concerning the tires until on or about the 20th day of May following. At that time he went to the warehouse of respondent, introduced himself, and stated that he desired to take out two of the tires. He was then informed that at the time the tires and tubes were stored respondent had issued warehouse receipts for all of the tires in the name of the Utah Rubber Company, and had delivered those warehouse receipts to one J. W. Francis; that all of the tires, ex-

cept 400, had been withdrawn; and that two warehouse receipts for 400 tires and tubes had been negotiated to a local bank; that said bank had notified respondent to hold the 400 tires and tubes to protect its claim.

Respondent's testimony is to the effect that none of its officers had any conversation or conversations with appellant; that all negotiations were carried on with J. W. Francis; that he brought the bill of lading to respondent's office; that under direction of the secretary of the respondent company Francis had caused the car containing the shipment to be "spotted" upon respondent's tracks; and that thereafter the tires and tubes were taken from the car, and, at the request of Francis, warehouse receipts were issued and delivered to him in the name of the Utah Rubber Company.

The first certificate or receipt was for the entire carload. At a later date, on or about April 1, 1920, Francis again appeared at respondent's warehouse, and requested that the former receipt or certificate be changed and other receipts given, and that two receipts covering 400 tires and tubes be taken and separated from the original receipt. This was done, and these two receipts are the ones negotiated to the bank.

On or about May 20th appellant tendered to respondent the amount of charges due upon the storage and shipment. That payment was refused, and the respondent also refused to deliver any of the tires or tubes to appellant. Appellant thereupon employed counsel and a detective, and attempted to locate and recover the tires and tubes which Francis had withdrawn and sold to various dealers in the state of Utah and elsewhere. As a result of those efforts, tires and tubes aggregating in value approximately $12,000 were recovered.

On or about June 3, 1920, appellant entered into a written contract with Francis respecting the payment of the purchase price of the tires and tubes theretofore purchased from the Victor Rubber Company by appellant, and which were received in the shipment in controversy. In the contract of June 3rd reference is made to an oral contract be-

tween appellant and Francis made during the months of March and April preceding. The substance of this oral contract is evidenced by two writings, one in the form of a letter written by appellant dated April 23rd and the other in the form of a document designated "agreement" signed by both parties and dated April 15th. The effect of those two writings is that Francis agreed to undertake to sell the tubes and tires received by appellant in the shipment from the Victor Rubber Company. These writings lend but little, if any, aid in the determination of the respective rights of the parties to this action. Nowhere in either of the writings is there anything indicating that appellant had or was conveying or giving to Francis any title or interest in the tires or tubes undertaken to be sold. Francis was allowed a commission on the tires and tubes that he sold as the same were released by appellant. In our judgment, the rights of the parties must be determined from the intent of the parties as expressed in the written agreement of June 3rd interpreted in the light of the facts and circumstances appearing in the record. There is nowhere in the record any suggestion that appellant ever authorized respondent to give warehouse receipts or warehouse certificates in the name of the Utah Rubber Company at the time the shipment was stored in respondent's warehouse. Neither is it disputed that in the bill of lading for the merchandise stored the goods were consigned to the Security Sales Company.

Nor is there any evidence that appellant, by his conduct, authorized Francis to have the goods placed in the warehouse under any other name than that of the consignee named in the bill of lading. We may exonerate respondent from any intent to work an injustice upon appellant by issuing the warehouse certificates as it did, or by permitting Francis to withdraw the merchandise so stored. The fact, however, that respondent did issue warehouse certificates in the name of the Utah Rubber Company and permit Francis to withdraw the goods from its warehouse was, so far as the record shows, wholly unauthorized by appellant, and the

act of issuing such certificates and permitting the goods to be withdrawn by Francis could not be binding upon appellant, and could not deprive him of his right to maintain an action for the value of the tires and tubes so permitted to be withdrawn, unless some subsequent act or conduct on his part defeats such right of action. The respondent, in issuing the warehouse certificates, must have acted jointly, or, at least, in connection, with Francis. From the record there can be no doubt that Francis knew he had no authority or right to have the warehouse receipts issued in any other name than that of the consignee in the bill of lading. Respondent had notice of the fact that the Security Sales Company was the consignee, and, unless authorized by some act or conduct of the party or parties doing business under the name of the Security Sales Company, was not justified in issuing warehouse receipts in any other name. The unlawful act of Francis and the negligent conduct of respondent combined to deprive appellant of the automobile tires and tubes which he had intrusted to respondent for storage. It must necessarily follow, therefore, in our judgment, that Francis and respondent were joint wrongdoers in depriving appellant of his property. And it likewise follows that, unless appellant has by some subsequent agreement or conduct relieved the respondent and Francis, or one of them, from their several and joint liability as wrongdoers, the appellant had the right to maintain this action. As we view the record, the only defense upon which respondent can rely is the provisions of the contract of June 3rd made between appellant and Francis. It is undisputed that at the date of the making of the contract appellant was in full knowledge of all of the facts relating to the storage of the merchandise in respondent's warehouse; knew that warehouse receipts had been issued in the name of the Utah Rubber Company; knew that very much of the merchandise had been withdrawn by Francis, and that the warehouse receipts for the remaining merchandise had been pledged to a local bank to secure a loan made by the Utah Rubber Company.

There is no claim proven, or attempted to be proven, that appellant was not cognizant of all of the facts at the time of voluntarily entering into the agreement of June 3rd.

We have found difficulty in reflecting the provisions of that contract by any general statement of its terms, and for that reason are copying it in full in this opinion. The contract reads:

"This agreement, made and entered into this 3d day of June, A. D. 1920, by and between Lauren W. Gibbs of the city and county of Salt Lake, state of Utah, party of the first part, and J. W. Francis of the city and county of Salt Lake, state of Utah, party of the second part, witnesseth that:

"Whereas, in the years 1919 and 1920, and prior to the month of June, 1920, the party of the first part purchased from the Victor Rubber Company shipments of automobile tires and tubes of the value of $31,783.05; and

"Whereas, said shipments of automobile tires and tubes were delivered to the party of the first part by said Victor Rubber Company in the city and county of Salt Lake, state of Utah; and

"Whereas, during the months of March and April, 1920, the party of the first part entered into an oral agreement with the party of the second part, the substance of which agreement is contained in two letters dated April 23, 1920, written by the party of the first part to the party of the second part, copies of which are hereto attached and made a part hereof, whereby the party of the second part undertook and agreed to sell such shipments of automobile tires and tubes as aforesaid, said automobile tubes being the property of the party of the first part and of the value of $31,783.05; and

"Whereas, the party of the second part, as agent for the Utah Rubber Company, has disposed of a certain number of said automobile tires and tubes under said agreement, the exact amount and value of which is, at the present time, unknown; and

"Whereas, said second party is now unable to continue with and perform the said agreement made as aforesaid, and said first party has heretofore released said second party from any further obligations under said oral agreement made as aforesaid except as herein expressly reserved; and

"Whereas, said party of the first part is now indebted to the Victor Rubber Company for the purchase price of said shipment of tires and tubes as aforesaid, so delivered to the party of the first part, which said indebtedness is evidenced by trade acceptances in the sum of $31,783.05:

"Now therefore in consideration of the premises and the mutual covenants and agreements herein contained, the party of the first part hereby agrees to return to the Victor Rubber Company, or to sell to such other purchasers as may be found, all Victor tires and tubes now in possession of himself or which may be placed under his control or in his possession by the party of the second part; and the party of the first part agrees that all such proceeds, either credit or cash, as may be realized by the party of the first part from the disposition of said tires and tubes will be applied on the said purchase price of the said tires and tubes received by the party of the first part from the Victor Rubber Company; and the party of the second part hereby agrees to pay to the party of the first part, on or before 30 days after the party of the first part shall submit to J. L. Soule of Baker City, Ore., a final statement and accounting of the settlement of said accounts with the Victor Rubber Company, a sum of money equal to the difference between the invoice price of said shipments of tires and tubes by the Victor Rubber Company to the party of the first part, and such amount, whether cash or credit, as may be realized by the sale or other disposition of tires and tubes now in possession of, or under control of, said first party.

"It is mutually understood and agreed by the parties hereto that L. W. Gibbs is the Security Sales Company and wherever in negotiations between the party of the first part and the party of the second part 'Security Sales Company' is used it is understood that 'the Security Sales Company' means L. W. Gibbs, party of the first part herein, and that said L. W. Gibbs is the sole party in interest in said Security Sales Company.

"It is further understood and agreed that such tires and tubes shall be stored at the risk and expense of said L. W. Gibbs and that in the event of loss by fire or theft credit shall be allowed said second party for the full invoice value of the property so lost.

"It is understood and agreed by the parties hereto that performance of the covenants and agreements herein contained and undertaken by the party of the second part shall be due, and all sums of money due and payable under this agreement by the party of the second part to the party of the first part shall be due on or before 30 days after the party of the first part shall have submitted to J. L. Soule of Baker City, Ore., a final statement and accounting of the settlement of said accounts with the Victor Rubber Company.

"It is further mutually agreed and understood that in the event the party of the first part shall be required to pay any dealer in tires and tubes or to any other person any amount or amounts by reason of the discounting of any trade acceptance by the party of the second part, individually or as agent of the Utah Rubber Company, at the

banking house of McCormick & Co. in Salt Lake City, Utah, or else-
where, then and in that event the party of the second part hereby
agrees to reimburse the party of the first part for all such sum or
sums as may be so paid by the party of the first part, such reimburse-
ments to become due and payable 30 days after the making of report
to J. L. Soule of Baker City, Ore., of the payment of such sum or
sums by the party of the first part.

"Witness our hands this 3d day of June, A. D. 1920.

"Witnessed by Henry D. Moyle.

"[Signed]   J. W. Francis.
"Lauren W. Gibbs."

In a footnote one J. L. Soule guarantees that Francis
would in all respects perform the obligations assumed by
him in the body of the contract.

Much is said in the printed briefs of counsel respecting
the election of remedies. We have attempted to point out
that, under the facts shown, appellant had the right to
maintain an action against respondent and Francis either
severally or jointly for the conversion of the tires and tubes,
unless by the contract of June 3rd he had released one of
the parties from liability by reason of their wrongdoing.
The contract is not an election of remedies. On the contrary,
it is an election of a substantive right. It is admitted that
the automobile tires and tubes referred to in the contract of
June 3rd were the same tires and tubes consigned to the
Security Sales Company and stored in the warehouse of re-
spondent. The contract of June 3rd is an unequivocal agree-
ment on the part of one of the wrongdoers, Francis, to pay
to appellant the purchase price of those tires and tubes. Not
only does the writing bind Francis under contractual agree-
ment, but appellant received, in addition, the undertaking
and agreement on the part of J. L. Soule that Francis would
comply with, and meet the requirements of, said writing.
The guarantee on the part of Soule introduces a new ele-
ment into the relationship between appellant and Francis,
and constitutes a new consideration for the making of the
contract of June 3rd.

In the annotator's note to *Schenk v. State Line Tel. Co.*, 35 A. L. R. at page 1153, it is said:

"The rule as to election of remedies is not one of substantive law, but it is merely of judicial administration; and it is often confused with the question of the election of substantive rights. There is a clear distinction between the two. The doctrine of election of remedies applies in order to protect one from vexatious litigation while the rule as to election of substantive rights has to do with the actual status of some property or contractual rights. That is to say, a person having the option definitely to fix a property or contractual right without reference to the consent or wishes of the other party to the transaction is bound by his exercise of the option. This may be illustrated by reference to the right of a defrauded party to ratify and validate the contract, or the election of a seller to treat the title of goods as passed to the buyer, notwithstanding the latter's failure to perform a condition precedent. In such cases, by the exercise of his election, the party has definitely established the status of the right; and, where he has acted with full knowledge of the facts, his act is properly irrevocable."

The original right of action against either or both respondent and Francis was one for the wrongful conversion of appellant's property. The obligation on the part of the wrongdoers is joint and several. Under all of the authorities, accepting payment from one or releasing one wrongdoer from payment releases all. The general expression used by the text-writers is "the release of one joint tort-feasor is the release of all." The theory underlying the statement of the rule is that the claim is one obligation both joint and several, and whenever the obligation is satisfied as to one it is necessarily released as to the others.

It seems reasonably clear that the contract of June 3rd, interpreted in the light of all the surrounding circumstances, was such an agreement as substituted the liability of Francis as a wrongdoer for a liability based upon contract, and, to that extent, released Francis from any liability based upon his wrongdoing. If it released Francis, then under the authorities, the respondent is likewise released from any liability which arose from its wrongdoing in connection with Francis.

If we treat the contract as an accord and satisfaction, the same result must, in our judgment, necessarily follow. The general rule, as stated in the cases cited by counsel for appellant, that to entitle a defendant to rely upon accord and satisfaction it must be made to appear, not only that the accord has been made, but that it has been executed and satisfied, is not controlling here, for the reason that the contract of June 3rd, by its terms, purports to be a new undertaking and an entire satisfaction of any obligation of Francis by reason of the wrongful conversion of appellant's property. This case, in our judgment, is controlled by the exception to the general rule. That exception is stated by the Supreme Court of New York in *Kromer v. Heim*, 75 N. Y. at p. 576 (31 Am. Rep. 491), as follows:

"The rule that a promise to do another thing is not a satisfaction, is subject to the qualification that where the parties agree that the new promise shall itself be a satisfaction of the prior debt or duty, and the new agreement is based upon a good consideration, and is accepted in satisfaction, then it operates as such, and bars the action."

In *Goodrich v. Stanley*, 24 Conn. at page 621, the court says:

"In order that such an accord should be a defense to the original debt, it is necessary, in the language of Park B. in the case last cited, that the plaintiff should have 'agreed to accept the agreement itself, and not the performance of it, as a satisfaction for his debt, so that if it was not performed, his only remedy would be by an action for the breach of it, and not a right to recur to the original debt.' There must be a valid agreement substituting a new cause of action in place of the old. It is not sufficient that there is a mere accord between the same parties, with mutual promises, but there must be a new agreement with a new consideration."

To the same effect are *Whitney v. Cook*, 53 Miss. 551; *White v. Gray*, 68 Me. 579; *Babcock & Russell v. Hawkins*, 23 Vt. 561.

By the terms of the contract of June 3rd the appellant received, not only the contractual obligation of Francis to make good the value of the merchandise, but a guaranty on

the part of Soule that Francis would carry out, and satisfy, the contract then made. No other conclusion or inference is deducible from the terms of the contract and the facts and circumstances surrounding its execution than that the appellant received such contract and the obligations assumed thereunder by the other parties to it in payment or satisfaction of any claim that he theretofore had against Francis by reason of his wrongful conversion of appellant's goods.

Among other authorities cited and relied upon by counsel for appellant are the following: *Sweet v. Montpelier S. B. & T. Co.*, 69 Kan. 641, 77 P. 538; *Home S. B. v. Otterbach*, 135 Iowa, 157, 112 N. W. 769; *Washbon v. State Bank of Holton*, 86 Kan. 468, 121 P. 515; *August v. Fourth Nat Bank*, 1 N. Y. S. 139; *Iddings v. Citizens' State Bank*, 3 Neb. (Unof.) 750, 92 N. W. 578; *Crouch v. Quigley*, 258 Mo. 651, 167 S. W. 978. We have examined the cases noted above, and the rules or principles of law announced therein when considered in connection with the particular facts in these cases, are, in our judgment, not in conflict with the result reached here.

Judgment affirmed, with costs.

THURMAN, CHERRY, and FRICK, JJ., concur.

STRAUP, J., dissents.