## GREENHALCH v. SHELL OIL CO.
### No. 1236.

Circuit Court of Appeals, Tenth Circuit.

Aug. 21, 1935.

William A. Dawson, Dale G. Foote, B. P. Leverich, and A. H. Hougaard, all of Salt Lake City, Utah, for appellant.

Paul H. Ray, of Salt Lake City, Utah (Emmett M. Bagley, Robert L. Judd, and

A. H. Nebeker, all of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

In an action for personal injuries, defendant answered that plaintiff had theretofore sued Dooley Brothers Association for the same wrong, had accepted $1,250.00 in full satisfaction therefor, and had given the following release:

"Release and Stipulation for Dismissal.

"Comes now the plaintiff, Joseph Greenhalch, and acknowledges receipt and payment to him by the said defendant Dooley Brothers Association for the sum of Twelve Hundred Fifty Dollars ($1250.00) lawful money of the United States, receipt whereof he acknowledges and confesses, and in consideration thereof he, the said plaintiff, has released and discharged, and by these presents does for himself, his heirs, executors, administrators and assigns release and forever discharge the said defendant, Dooley Brothers Association, a corporation, its officers, agents and employees, jointly and severally of and from all claims, demands, damages, actions, causes of action or suits at law or in equity of whatsoever kind or nature, for or because of anything done, omitted, or suffered to be done by the said Dooley Brothers Association, defendant, and, or its officers, agents and employees, jointly or severally, prior to and including the date hereof, and particularly on account of all injuries and damages to his person resulting or to result from an accident which occurred on or about the 10th day of January, 1933, at Salt Lake City, Utah, and particularly release the said defendant from all matters and things alleged in plaintiff's complaint herein;

"It being understood, however, that this release does not affect any cause of action which plaintiff may have against any physician or surgeon for malpractice or neglect;

"In consideration of said payment it is stipulated and agreed between the plaintiff and the plaintiff's attorneys and the attorneys for the defendant, that the above entitled cause may be dismissed with prejudice, upon merits as settled, at plaintiff's costs."

On the trial, the settlement and release were admitted. Plaintiff's counsel testified that after the release was given he first learned of defendant's connection with the premises whose defective condition resulted in the injury. That being all the proof offered on this issue, and the trial court being of the opinion after argument of counsel that plaintiff's cause of action, if any, was discharged by the release, all other evidence offered was excluded over objection, to which ruling an exception was saved. Error is assigned thereto. Under such circumstances, no offer of proof was necessary, New York Life Ins. Co. v. Doerksen (C. C. A. 10) 75 F.(2d) 96; if such ruling was proper, the court properly directed a verdict for defendant.

Title 47, R. S. Utah 1933 (47-0-1), defines "obligation," "obligor," and "obligee" as including tort liabilities and the parties thereto. Section 3 (R. S. Utah 1933, 47-0-3) provides that payments made by an obligor not a surety shall be credited on the obligation of co-obligors. Sections 4 and 5 read:

"*Release of Coobligor—Reservation of Rights.* Subject to the provisions of section 47-0-3, the obligee's release or discharge of one or more of several obligors, or of one or more of joint or of joint and several obligors, shall not discharge coobligors against whom the obligee in writing and as part of the same transaction as the release or discharge expressly reserves his rights; and in the absence of such a reservation of rights shall discharge coobligors only to the extent provided in section 47-0-5." Title 47, R. S. Utah 1933, 47-0-4.

"If an obligee releasing or discharging an obligor without express reservation of rights against a coobligor then knows or has reason to know that the obligor released or discharged did not pay as much of the claim as he was bound by his contract or relation with that coobligor to pay, the obligee's claim against that coobligor shall be satisfied to the amount which the obligee knew or had reason to know that the released or discharged obligor was bound to such coobligor to pay.

"If an obligee so releasing or discharging an obligor has not then such knowledge or reason to know, the obligee's claim against the coobligor shall be satisfied to the extent of the lesser of two amounts,

namely: (a) the amount of the fractional share of the obligor released or discharged, or (b) the amount that such obligor was bound by his contract or relation with the coobligor to pay." Title 47, R. S. Utah 1933, 47-0-5.

Counsel for plaintiff concede that "in the absence of statute the release of Dooley Brothers Association, by operation of law, released the Shell Oil Company." In this, we think they are well advised. Cases gathered in the elaborate annotation to Young v. Anderson, 33 Idaho, 522, 196 P. 193, 50 A. L. R. 1057, disclose a sharp conflict among the state courts as to the effect of a release given to one of two or more joint tort-feasors. All courts agree that there can be but one full compensation for one wrong; but there the way divides. Many courts hold that a release of one tort-feasor releases all, irrespective of intent of the parties (note, supra, 50 A. L. R. page 1060), unless the release takes the form of a covenant not to sue (note, supra, 50 A. L. R. page 1081). Among this group is listed Gibbs v. Redman Fireproof Storage Co., 68 Utah, 298, 249 P. 1032. The facts in that case do not present the question and the rule was but mentioned in passing. Other jurisdictions adhere to what we conceive to be the better rule, that if the release affirmatively discloses an intent not to release other joint tort-feasors, and if full compensation has not been received, such others are not thereby released from liability for uncompensated damage resulting from their wrong; the form in which the release is drawn (a covenant not to sue) should not be conclusive upon the question of intent. The Eighth Circuit Court of Appeals met this question years ago, the court then consisting of Judges Sanborn, Thayer and Hook. Carey v. Bilby, 129 F. 203, 206. After stating the two rules then and now existing, that court adhered to the rule to which we now subscribe, and said:

"We are of opinion that the doctrine enunciated in the cases last cited is supported by the greater weight of authority, and is founded upon the better reasons. It has the merit of giving effect to the intention of the party who executes such an instrument, which should always be done when the intention is manifest and it can be given effect without violating any rule of law, morals, or public policy. Besides, we are not aware of any sufficient reason which should preclude a person who has sustained an injury through the wrongful act of several persons from agreeing with one of the wrongdoers, who desires to avoid litigation, to accept such sum by way of partial compensation for the injury as he may be willing to pay, and to discharge him from further liability without releasing his cause of action as against the other wrongdoers. The law favors compromises generally, and it is not perceived that an arrangement of the kind last mentioned should be regarded with disfavor."

We agree with the trial court that this release manifests no intent to reserve any rights against defendant, but quite the contrary. The release doubtless was drawn by plaintiff's counsel in the pending action; at least it was drawn by one familiar with the law, for care was exercised to reserve his right against the physician or surgeon treating him. Counsel drawing the release knew that Dooley Brothers Association was liable for all his damages if it was liable for any. At the time the release was drawn, defendant's connection with the premises was not known, and manifestly it was not intended to reserve rights against an unknown. The damage suffered was incapable of exact measurement in dollars; the sum received was substantial. Reading the entire release in the light of the circumstances, it seems fairly clear that plaintiff intended to acknowledge full satisfaction for damages resulting from his injury, except such damages as resulted from his doctor's careless treatment thereof. In any event, it is entirely clear that no right against defendant herein was reserved or intended to be reserved.

Plaintiff claims the quoted statute bars the court from ascertaining the intent of the parties in executing the release and from enforcing it as so construed. In detail, the language of parts of the statute is confusing. In its broad aspect, we have no doubt the legislature intended to embody therein the more liberal rule to which we subscribe, that is, it permits a plaintiff who has not been fully compensated to release one of several defendants without releasing the others by expressly and in writing reserving his rights against such others, with the incidental provision that payments received from the released one shall be credited

to the others, unless there exists between the obligors some relationship which would make such credit inequitable. Counsel's diligence has brought to light several authorities, none of which affords much help in the difficult task of ascertaining the legislative intent from the complicated sentences used. New York, Wisconsin, and Nevada have the same statute. In Warner v. Brill, 195 App. Div. 64, 185 N. Y. S. 586, a New York Court held, without discussion, that under the statute a release of one joint tort-feasor did not release all. In Gavin v. Malherbe, 146 Misc. 51, 261 N. Y. S. 373, 374, the case was decided by common law rules. The Court of Appeals of New York, in Milks v. McIver, 264 N. Y. 267, 190 N. E. 487, held that where a release was given in satisfaction of all damages, it released a claim against the attending physician for malpractice. We find no other cases involving this statute. Other states have simpler statutes authorizing settlements with reservation of rights against others jointly liable, but cases construing such statutes do not bear directly upon our problem. Cf. Abbott v. City of Senath (Mo. Sup.) 243 S. W. 641; Knoles v. Southwestern Bell Tel. Co., 218 Mo. App. 235, 265 S. W. 1005; Burton v. Joyce (Mo. App.) 22 S.W.(2d) 890; McEwen v. Kansas City Public Service Co., 225 Mo. App. 194, 19 S.W.(2d) 557; Klaber, Adm'r of Jamison, v. Kansas City, 223 Mo. App. 684, 17 S.W.(2d) 621; Clifton v. Caraker (Mo. App.) 50 S.W.(2d) 758; Topeka v. Brooks, 99 Kan. 643, 164 P. 285; Duncan v. New River Coal Co. (W. Va.) 174 S. E. 370. In the absence of helpful authority and of any decision by the Utah courts, we must undertake to construe the statute a priori.

By the third section (47-0-3), no cause of action remains if full compensation for the injury is received. We incline to the view that plaintiff intended to acknowledge full satisfaction for his injury except as it was aggravated by the neglect of his doctor. But we need not rest the case there.

Section 4 (47-0-4) enables a plaintiff to release one obligor without discharging others where there is a written and express reservation of rights against the others. This part of the sentence is clear; there being no such reservation here against defendant, it does not advance plaintiff's case.

The part of section 4 after the semicolon provides that without such reservation, the release "shall discharge co-obligors only to the extent provided in section 47-0-5." Section 5 (47-0-5) however is meaningless as applied to cases such as this, where there is no relationship between joint tort-feasors which requires one of them to pay or contribute to the other. Except where there is a primary and a secondary responsibility for the wrong done, growing out of the relationship between the joint tort-feasors or from the situation, "the general principle of law is well settled that one of several wrongdoers cannot recover against another wrongdoer, although he may have been compelled to pay all the damages for the wrong done." Union Stock Yds. Co. v. Chicago, etc., R. Co., 196 U. S. 217, 224, 25 S. Ct. 226, 227, 49 L. Ed. 453, 2 Ann. Cas. 525. No such exceptional situation being here present, section 5 has no application to this case. What, then, of the connecting phrase in section 4? Shall it be construed as applicable only where section 5 to which it refers is applicable, or should it be given independent force?

If given independent force, it is at once apparent that it nullifies the main part of section 4 in the usual case where there is no contribution among wrongdoers; for then the section would read that a release does not discharge a joint wrongdoer if there is a reservation of right, and does not discharge him if there is not. So construed, it is a complete departure from the liberal common law rule which we are persuaded the legislature intended to crystallize in the statute, and prevents a release being enforced as the parties intended. Unless the connecting phrase and section 5 are held to be applicable only where there is an obligation between the co-obligors, then we confess our inability to give any sensible construction to that part of the statute.

There being no written reservation of right against defendant, as provided in section 4, we conclude that the release given discharged defendant from liability, if any, for plaintiff's fall.

That Judge Johnson, long familiar with Utah law and its construction by the bench and bar of that state, reached the same conclusion, strongly fortifies our opinion.

The judgment is affirmed.