**UNITED STATES**

**v.**

**FIRST SEC. BANK OF UTAH, N. A.**

**UNITED STATES v. ALLEN.**

**UNITED STATES**

**v.**

**COTA (two cases).**

**Nos. 4669–4672.**

United States Court of Appeals
Tenth Circuit.
Nov. 10, 1953.

which event he shall be sentenced to imprisonment for life". (Emphasis supplied.)

H. D. Lowry, Salt Lake City, Utah, for appellant.

Woodrow D. White, Salt Lake City, Utah, for appellees.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

These four actions were brought against the United States under the Tort Claims Act [1] to recover damages arising out of an accident which occurred on a highway in Utah. In three of the cases, the action was brought by the person who sustained personal injuries in the accident. The fourth case was brought by the administrator of the estate of a person who was killed in the accident.[2] The actions were combined for purposes of trial and by stipulation they were consolidated in this court on appeal. It is apparent that all questions of law and fact are equally applicable to all the cases.

The complaints alleged that the plaintiffs were riding in a motor vehicle being operated in a northerly direction on a public highway in Summit County, Utah; that at the same time an automobile owned and operated by Grant Vernon, a United States mail carrier, was proceeding toward the plaintiffs in a southerly direction; that immediately behind the Vernon automobile, Oliver C. Mardis was operating a truck drawing a heavily loaded housetrailer; that Vernon negligently and suddenly applied his brakes and retarded the speed of his automobile; and that as a result of such negligence, the Mardis trailer swerved to the left of the center line of the highway, collided with the automobile in which the plaintiffs were riding, and caused the injuries complained of. The United States denied negligence on the part of Vernon and alleged that the sole and proximate cause of the injuries was the negligence of Mardis. It also alleged that the actions were barred by the provisions of 28 U.S. C.A. § 2676.

The court found that the proximate cause of the plaintiffs' injuries was the negligence of Vernon, and that if Mardis was negligent, his negligence was not the proximate cause of the injuries. Judgment was entered for the plaintiffs for approximately $160,000, from which was deducted amounts which each plaintiff had received from settlements made with Mardis and Vernon and their insurance carriers. The United States has appealed.

This appeal raises only questions relating to the liability of the United States. (1) May the plaintiffs maintain actions under the Tort Claims Act after having made settlements with the employee of the United States? (2) Is there sufficient evidence to sustain the finding that the employee of the United States was negligent, and that his negligence was the proximate cause of the injuries? (3) Assuming the negligence of the employee of the United States, was there intervening negligence by a third party which was the sole proximate cause of the injuries?

At about 11 o'clock on the morning of the accident, Vernon, in the course of his duties in making rural mail deliveries, was traveling in a southerly direction on U. S. Highway 189, immediately south of the Town of Hoytsville, Utah. He made a stop at a mailbox approximately ¼ of a mile south of a service station near Hoytsville. Upon leaving this mailbox he observed a panel truck pulling a trailer upon the highway near the service station. His next stop was approximately ¼ of a mile further south. He proceeded at a speed of about 15 to 20 miles per hour. The highway at this point had a paved surface of 22 feet and a gravel shoulder on the west side about 8 to 10 feet in width. The second mailbox at which Vernon was preparing to stop was located at the outer edge of the shoulder. When approximately 200 feet north of the second mailbox, Vernon. after observing the panel truck a short

---

1. 28 U.S.C.A. § 1346(b) and Ch. 171.

2. The parties will be referred to herein as plaintiffs and the United States.

distance behind him, applied his brakes to slow down his car preparatory to pulling off the paved surface of the highway and on to the gravelled shoulder of the road. After slowing down, Vernon continued on and within a short distance his automobile was off the paved portion of the highway except for its left wheels. He did not come to a complete stop until he reached the mailbox. Vernon's brake lights on the rear of his car flashed when he applied his brakes and Mardis, who was then traveling at a speed of about 35 miles per hour some 75 to 100 feet behind Vernon, saw them. Mardis testified that when he observed the flash of Vernon's brake lights, it was necessary for him to stop in a hurry. The oncoming car in which the plaintiffs were riding prevented him from passing the Vernon car on the left and he attempted to stop by setting the brakes on the truck and trailer. Upon the application of the brakes, the trailer jackknifed and swung across into the opposite traffic lane and struck the car in which the plaintiffs were riding.[3]

There was a direct conflict in the testimony as to whether Vernon had given a hand signal indicating that he was about to slacken his speed and pull off the highway. The court found that the only signal given was the flash of the brake lights. This apparently was simultaneous with the setting of the brakes. The court also found that Vernon, "without signaling and without any warning whatsoever, suddenly applied the brakes to his automobile and suddenly retarded its forward speed for the purpose of turning from the highway to effectuate the delivery of a letter to the * * * mail box on his right-hand side of the road, * * *." The court further found that Vernon's action constituted negligence and was the proximate cause of the collision between the trailer and the plaintiff's automobile. It also found that if Mardis was negligent, his negligence was not the sole proximate cause of the collision between the vehicles.

Before this action was brought, the plaintiffs made settlement with Vernon, Mardis, and their insurance carriers, and received a total amount of $27,500. Each plaintiff executed a covenant not to sue and specifically reserved the right to proceed against the United States to re-

---

3. Mardis testified as follows:

"Q. What did the Hudson appear to be doing? A. Well, he was driving along the approximate speed I was. Maybe I was gaining on him a very little, if any, and we just proceeded along, and all at once he just set his brakes in front of me. I seen his taillights flash that he had set his brakes and that is when I had to proceed to stop in an awful hurry, and as I tried to stop I first set my brakes and glanced up and see there was no chance to go around him, and I really had to tighten my brakes to keep from hitting him, and at that point my trailer jackknifed and swung across in the opposite lane, and a car proceeding in the other direction ran into my trailer.

"Q. When you say you set your brakes, will you describe the brake equipment which you used on your truck and trailer? A. My trailer is equipped with electric brakes, hand operated, and the truck is equipped with the regular four wheel brakes.

"Q. Is there a lever for applying the brakes on the trailer located near the driver's seat? A. Yes, it mounts on the steering column. You just pull the lever down to operate the electrical brakes.

"Q. How did you apply your electric brakes? A. I just pulled that brake control down to check my speed.

"Q. With which hand? A. My right hand.

"Q. Where was your left hand? A. On the steering wheel guiding the truck.

"Q. You pulled the brake lever operating the trailer brakes with your right hand and that set the brakes on the trailer? A. Yes.

"Q. What did you do to retard the forward motion of your truck? A. I gradually tightened down on my foot brake on the truck.

"Q. And will you just state what the effect of that braking operation was? A. I seen I couldn't pass him.

"Q. Why couldn't you pass him? A. There was another car coming from the other way, and I seen if I didn't stop in a hurry I would hit the car in front of me, and I really set the brakes, and at that time my trailer jackknifed out on me and swung out into the other lane."

cover damages under the Tort Claims Act. The United States contends that under the provisions of 28 U.S.C.A. § 2676, these settlements bar recovery in these actions.

Section 2676 provides that a judgment in an action under the Tort Claims Act, "shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." The language of this section is unambiguous. It clearly provides that if a claimant recovers judgment under the Tort Claims Act against the government, he cannot then proceed against the government employee. The United States urges that Congress must have intended also that a judgment or settlement with the employee would bar recovery against the government. We have found no authority for such a construction, and none has been cited. Congress with meticulous care provided that recovery of a judgment against the government shall constitute a bar to any action against the employee whose negligence gave rise to the claim, but for reasons satisfactory to itself, it failed to provide, directly or indirectly, that a satisfaction of a claim against an employee should bar an action against the government and the courts cannot supply it.

▆▆ In the settlements with Vernon, Mardis, and their insurance carriers, the plaintiffs did not give an outright release from liability, but executed a "covenant not to sue" wherein the right to proceed against the United States under the Tort Claims Act was specifically reserved. It is well established that the release of one joint tortfeasor operates to release all of them. Restatement of Torts, Vol. 4, Sec. 885; Dawson v. Board of Education of Weber County School Dist., Utah, 222 P.2d 590; Gibbs v. Redman Fireproof Storage Co., 68 Utah 298, 249 P. 1032; Annotation 148 A.L.R. 1272. It is generally recognized, however, that a covenant not to sue one or more tortfeasors with express reservation of the right to proceed against others does not bar an action against other joint tortfeasors. Restatement of the Law of Torts, Vol. 4, Sec. 885; Green v. Lang Co. Inc., 115 Utah 528, 206 P.2d 626; Eberle v. Sinclair Prairie Oil Co., 10 Cir., 120 F.2d 746, 135 A.L.R. 1494; Greenhalch v. Shell Oil Co., 10 Cir., 78 F.2d 942; Annotation 148 A.L.R. 1288. The Utah statute also provides that such a covenant does not operate to bar an action against a joint tortfeasor. Utah Code Anno.1953, Title 15, Ch. 4, §§ 1, 2, 3 and 4. A master and servant are each liable for injuries caused by the negligence of the servant in the course of his employment. The servant is liable because he committed the tort and the master is liable under the doctrine of respondeat superior. While they may not be joint tortfeasors in the sense that their joint acts caused an injury, a majority of the courts hold that their liability is joint and several and each is liable to the full extent of the injuries and they may be joined in an action in the same manner as joint tortfeasors.[4] The law of joint tortfeasors relating to releases and covenants not to sue is applicable. Annotation 126 A.L.R. 1199. We therefore conclude that the actions were not barred.

▆ On the question of the sufficiency of the evidence to sustain the finding of the trial court we have made a careful examination of the evidence and, although it is not free from doubt, we have concluded that there is substantial evi-

---

4. Norwalk v. Air-Way Electric Appliance Corp., 2 Cir., 87 F.2d 317, 110 A.L.R. 183; Henry W. Putnam Memorial Hospital v. Allen, 2 Cir., 34 F.2d 927; Employers Casualty Co. v. Barnett, 205 Okl. 73, 235 P.2d 685; Wendel v. Chicago, R. I. & P. R. Co., 170 Kan. 68, 223 P.2d 993; Marshall v. Chapman's Estate, 31 Wash.2d 137, 195 P.2d 656; Johns v. Hake, 15 Wash.2d 651, 131 P.2d 933; Wills v. J. J. Newberry Co., 43 Cal. App.2d 595, 111 P.2d 346; Schosboek v. Chicago, M. St. P. & P. R. Co., 191 Wash. 425, 71 P.2d 548; Normington v. Neely, 58 Idaho 134, 70 P.2d 396; Stanolind Oil & Gas Co. v. Bunce, 51 Wyo. 1, 62 P.2d 1297; Lasko v. Meier, 394 Ill. 71, 67 N.E.2d 162; Annotation, 135 A. L.R. 271, 98 A.L.R. 1057.

dence to sustain the findings that Vernon was negligent in the handling of his automobile, and that his negligence was the proximate cause of the plaintiffs' injuries.

On appeal, it is not the function of an appellate court to weigh evidence or draw inferences therefrom. It may not retry doubtful issues of fact and substitute its judgment for that of the trial court. Brown v. American Nat. Bank, 10 Cir., 197 F.2d 911; Shoemaker v. Leeper, 10 Cir., 186 F.2d 372; Widney v. United States, 10 Cir., 178 F.2d 880; Pendergrass v. New York Life Insurance Co., 8 Cir., 181 F.2d 136.

When two automobiles are being driven along a public highway in the same direction, each driver must exercise that degree of care which the conditions demand. No hard and fast rule as to the conduct of either can be laid down. When the driver of an automobile knows that another is about to overtake him and he suddenly stops or decreases his speed without warning, and a collision results therefrom, it is usually a question for the jury except where reasonable minds cannot differ, whether he used due care in giving warning signals that he was about to stop or slow up. Blashfield, Encyclopedia of Automobile Law, Vol. 2, Sec. 931; Cram v. Eveloff, 8 Cir., 127 F.2d 486; Cardell v. Tennessee Electric Power Co., 5 Cir., 79 F.2d 934. Title 41, Ch. 6, § 69(c) of the Utah Code provides that, "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal." It also provides that signals may be given by the hand and arm or by an approved lamp, or device. Title 41, Ch. 6, § 70. Vernon knew that the Mardis vehicle was following and overtaking him. The statute required Vernon to give an appropriate signal before stopping or suddenly decreasing his speed. No hand signal was given. It is urged that the visible light showing the application of Vernon's brakes complied with the statute. A fair inference to be drawn from the testimony of Mardis and his wife is that the brake light signal which was given by the Vernon automobile was simultaneous with its sudden decrease in speed. Under such circumstances, the signal was not effective and was not in compliance with the statute which provides that an appropriate signal must be given prior to stopping or suddenly decreasing the speed of a vehicle.

The remaining contention is that the trial court erred in not finding that Mardis' negligence was the sole proximate cause of the plaintiffs' injuries. The United States urges that the doctrine of proximate cause requires a continuous and unbroken sequence of events to establish liability, and that where the original wrong only becomes injurious in consequence of the intervention of some distinctive intervening negligent act by others, the proximate cause of the injury will be imputed to the second wrongdoer. This is a correct statement of the abstract law, but to be applicable it must be shown that the intervening act would have caused the injuries independently of the original wrong. 38 Am.Jur., Neg. Sec. 63. Assuming that Mardis was negligent and that without such negligence the collision would not have occurred, it is equally true that without Vernon's negligence the collision would not have occurred. The collision and the injuries to the plaintiffs would not have occurred without the concurring acts of both Mardis and Vernon. The court did not make a finding as to the negligence of Mardis. It merely found that if he was negligent, his negligence was not the sole proximate cause of the injury. With this finding we agree.

The negligence of one person cannot be justified by the concurring negligence of another. Where several causes producing an injury are concurrent, and each is an efficient proximate cause without which the injury would not have occurred, the injury may be attributed to all or any of the causes. Here the two separate acts occurred at the same time and both contributed to the injuries. If

430

the acts constituted negligence both Vernon and Mardis were responsible, and the plaintiffs could proceed against one or both of them. McKenna v. Scott, 10 Cir., 202 F.2d 23; McClave v. Moulton, 10 Cir., 123 F.2d 450. This is the rule in Utah. Charvoz v. Bonneville Irr. Dist., Utah, 235 P.2d 780; Caperon v. Tuttle, 100 Utah 476, 116 P.2d 402, 135 A.L.R. 1399; Jenkins v. Mammoth Mining Co., 24 Utah 513, 68 P. 845; Handley v. Daly Mining Co., 15 Utah 176, 49 P. 295; Annotation 131 A.L.R. 605. Caperon v. Tuttle, supra [100 Utah 476, 116 P.2d 404], was an automobile case. The court said, "The cases are numerous which hold that if injuries result from a collision, the proximate causes of which are the concurring negligent acts of the driver and a third person, recovery may be had against either or both of such negligent persons." It is obvious from the evidence here that the collision and the resultant injuries to the plaintiffs would not have occurred except for the acts of both Vernon and Mardis. Vernon or his employer cannot escape liability because the acts of Mardis contributed to those injuries.

Judgment affirmed.