**WILSEY–BENNETT TRUCKING COMPANY, a corporation, Appellant,**

v.

**A. W. FROST and M. K. Hall, Appellees.**

**No. 6199.**

United States Court of Appeals
Tenth Circuit.

Jan. 26, 1960.

Rehearing Denied March 10, 1960.

2. 5 U.S.C.A. § 1003.

Russell W. Ruud, Albuquerque, N. M. (McAtee, Toulouse & Marchiondo, and David R. Gallagher, Albuquerque, N. M., were with him on the brief), for appellant.

Harry A. Kiker, Jr., Albuquerque, N. M. (Hartley, Buzzard & Patton, Clovis, N. M., and Smith, Kiker & Kitts, Albuquerque, N. M., were with him on the brief), for appellees.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Two semi-trailer trucks collided on a New Mexico highway causing substantial damage to both vehicles. The plaintiff Frost brought this action against the defendants Bryant, Pike and Wilsey-Bennett Trucking Company, alleging that the collision was caused by the concurrent negligence of Bryant who was operating one of the trucks for Pike, and of the driver of a third truck owned by the defendant Wilsey-Bennett. M. K. Hall intervened and alleged that he was the owner of the truck driven by the defendant Bryant, and sought recovery from Wilsey-Bennett for damages to his truck and for the loss of its use. The principal defense of Wilsey-Bennett was that none of its trucks was in the vicinity when the accident occurred.[1] The trial court found for both the plaintiff and the intervenor.

The accident occurred at about 4 o'clock in the afternoon on November 21, 1957 while the plaintiff was driving his truck between Roswell, New Mexico and El Paso, Texas on U. S. Highway 70. It was a stormy day with snow and ice forming on the highway. During the noon hour, Frost had lunch at a truck stop north of Roswell. When returning to his truck after lunch he observed a pink Peterbilt truck parked nearby which he recalled as having "Risley-Bennett" or "Wilsey-Bennett" painted on it. Some time after leaving Roswell, Frost, who was driving in a southwesterly direction, overtook a pickup truck which was being driven slowly, but due to the condition of the highway he was unable to pass it. While Frost was following the pickup, he observed behind him what he described as the "odd colored" Peterbilt truck which he had seen in Roswell. Shortly thereafter this truck passed Frost and for some time remained between his vehicle and the pickup truck. As the Peterbilt was starting up a small hill and was approaching a rather sharp curve, it turned out to pass the pickup. Before the passing had been completed, the semi-trailer truck driven by Bryant approached from the opposite direction. Bryant pulled his truck over to the extreme right side of the highway and slowed his speed to allow room for the other truck to pass and to avoid a head-on collision. Frost testified that when the Bryant truck attempted to reduce its speed, it began to skid, partially jack-knifed, and then crossed over the center of the highway and into his trailer.[2] Bryant's testimony

---

1. At the opening of the trial, the attorney for Wilsey-Bennett Trucking Company stated: "We weren't there, Your Honor. That is our defense, sir."

2. Frost described the incident as follows: "Q. All right, sir. Will you go ahead and tell us what occurred then? A. Well, about the time he got up even with the pickup, why, I looked up to my left, and this curve coming around, and here came a Diamond 'T', a red Diamond 'T' truck, and a silver colored trailer, and I said 'Oh, Good God, they are going to hit head-on there.' And this pickup then had slowed down where I was right behind it, I wasn't over ten or fifteen, twenty feet behind it, and I had to slow down, and I pulled over as far as I could, off the pavement, without my right—all my seven wheels on the right hand side of the truck and trailer— * * *.
"* * * A. The Diamond 'T' was in—it had started to slide, going to a jack-knife, or a partial jack-knife.
"Q. Did you observe it sliding, sir? A. Well, I saw the front end, the trailer wasn't tracking, if you know what I mean, the trailer wasn't tracking with the tractor.
"Q. Can you tell the Court what it was about the trailer and the tractor, what caused you to observe that it wasn't tracking? A. Well, the front end of the tractor was over across the middle line, the double yellow line.
"Q. Was that your side of the highway? A. Yes, sir.
"Q. And that would be the left hand side of the highway, then, for the Diamond 'T'? A. Yes, sir, it would be the opposite side.
"Q. And what occurred then, sir? A. Well, he missed my cab—in other words, my truck, and slid on back and hit the trailer.
"Q. The Diamond 'T' tractor hit— A. The Diamond 'T' tractor slid on back and hit my trailer.
"Q. And where was your trailer with respect to the left hand side of the road or the right hand side of the road, at

as to the movement of the Peterbilt truck was substantially the same as that of Frost. He thought, however, that the plaintiff's trailer swung over into the east-bound lane of the road and the collision occurred there. The driver of the Wilsey-Bennett Peterbilt truck testified that he was in Alamogordo, New Mexico, 47 miles away, at the time of the accident. The court accepted Frost's version of what happened and found that Frost and Bryant operated their vehicles without negligence. The judgment allowed Frost $2,250 damages and the intervenor Hall $1,238.89.

 Findings of fact by the trial court on controverted issues will not be set aside unless clearly erroneous. Fed. Rules Civ.Proc. rule 52(a), 28 U.S.C.A.; Knudson v. Boren, 10 Cir., 261 F.2d 15; Federal Security Insurance Co. v. Smith, 10 Cir., 259 F.2d 294; Van Dreal v. Van Dreal, 10 Cir., 214 F.2d 715. It is the function of the trial court to resolve all issues and disputes which arise out of conflicting evidence, and findings which are supported by substantial evidence and not clearly erroneous will not be disturbed on appeal. Heldenbrand v. Stevenson, 10 Cir., 249 F.2d 424. Where the evidence is such that reasonable persons might draw different inferences, appellate courts will not substitute their judgment for that of the trial court. Wunderlich Contracting Co. v. United States, 10 Cir., 240 F.2d 201, certiorari denied 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed. 2d 859. It seems to us to be too clear for argument that the evidence is sufficient to sustain the finding that the truck which passed the pickup truck on a hill and as it approached a curve was that of the defendant Wilsey-Bennett Trucking Company.[3] Frost identified the truck as the one he had seen a short time before in Roswell with defendant's name painted thereon. The driver of the truck testified that he passed over the highway in the area where the accident occurred during the afternoon, but did not recall passing a pickup truck or meeting an oncoming truck while he was in the process of passing. He did not know that the two trucks had collided. The ownership of the third truck, as well as what acts of negligence, if any, contributed in causing the accident, were

the time that collision occurred? A. My trailer was over as far as I could get on the right hand side of the road, without going down into some—well, it wasn't real steep, but it was about thirty feet, I judge, it would have rolled down there, oh, thirty feet, or forty, before it would have leveled off again, about thirty feet deep.

"Q. And you were as near that drop-off as you could get, with safety? A. Yes.

"Q. And where was the Diamond 'T' tractor in the highway with respect to its left hand side or right hand side of the road, at the time the collision occurred? A. It was on my side, across the double line."

3. As to passing a motor vehicle under these conditions, the New Mexixco statutes provide:

"64–18–12. Limitations on overtaking on the left.—No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made *without interfering with the safe operation of any vehicle approaching from the opposite direction* or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within 100 feet of any vehicle approaching from the opposite direction."

"64–18–13. Further limitations on driving to left of center of roadway.— (a) No vehicle shall at any time be driven to the left side of the roadway under the following conditions:

"1. When approaching the crest of a grade or upon a curve in the highway where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction; * * * *". (Emphasis added.)

Ordinarily a violation of such provisions constitutes negligent conduct per se. Turrietta v. Wyche, 54 N.M. 5, 212 P.2d 1041, 15 A.L.R.2d 407; Zamora v. J. Korber & Co., 59 N.M. 33, 278 P.2d 569; Cf. H. W. Bass Drilling Co. v. Ray, 10 Cir., 101 F.2d 316, 321.

**148**

typical questions of fact to be resolved by the trial court. The fact that the Wilsey-Bennett truck did not actually collide with either of the vehicles or that the driver did not know that a collision had occurred, would be immaterial if his negligence in passing a vehicle on a hill and when approaching a curve was the proximate cause of the collision. United States v. First Sec. Bank of Utah, 10 Cir., 208 F.2d 424, 42 A.L.R.2d 951; Fairchild v. Dean, 198 Wash. 1, 86 P.2d 271; Beach v. Minkley, 302 Mass. 228, 19 N.E.2d 20; Cf. Rozzen v. Blumenfeld, 117 Cal.App.2d 285, 255 P.2d 850, 854; 5A Am.Jur., Automobiles and Highway Traffic, § 239; Annotation 62 A.L.R. 1181.

█ It is contended that the damages awarded Frost were excessive and not established by the evidence. To this we do not agree. There was evidence to the effect that the trailer was in good condition and that trailers of this model were at the time selling in New Mexico at a price of from $2,500 to $4,000. The purchase price of the trailer during the preceding year was $2,727, and it could not be replaced for less than $2,500. The estimated cost of repairing the trailer and restoring it to its former condition was $3,154; its salvage value was between $500 and $700. The $2,250 award was well within the range of these figures.

█ Finally, the defendant urges that the evidence shows that Hall was not the owner of the truck driven by Bryant. There is some confusion as to the record ownership but the evidence discloses that Hall bought the truck in the name of the defendant Pike and it was financed in the latter's name. Bryant apparently did trucking for Hall and he purchased the truck from Hall on a conditional sales contract, using Pike's name. Bryant made the required payments to Hall only until the time of the accident. Thereafter Hall continued to make payments, totalling $4,314.36, to the finance company. The record indicates that Hall was in possession of the

trailer and had made arrangements to have it repaired for a total amount of $1,238.89. Pike disclaimed any interest in the truck and Bryant made no claim to it. Under these conditions it appears that Hall is the real owner and entitled to recover. Furthermore, the issue of ownership was never presented to or decided by the trial court and cannot be raised for the first time on appeal. Cf. Marteney v. United States, 10 Cir., 245 F.2d 135, 140; Justheim Petroleum Co. v. Hammond, 10 Cir., 227 F.2d 629, 633.

The judgment in favor of the intervenor in the amount of $1,238.89 and in favor of the plaintiff in the amount of $2,250 is affirmed.