DENVER UNITED STATES NATIONAL BANK, a corporation, Appellant,

v.

ASBELL BROTHERS CONSTRUCTION, a partnership; and William R. Asbell and Keith V. Asbell, partners, associated and in business under the common name and style of Asbell Brothers Construction, Appellees.

No. 6582.

United States Court of Appeals Tenth Circuit.

Aug. 23, 1961.

Arthur W. Zarlengo, Denver, Colo. (Roncalio, Pattno & Graves, Cheyenne, Wyo., and C. Mert Reese, Denver, Colo., on the brief), for appellant.

G. L. Spence, of Spence, Hill, Oeland & Tschirgi, Riverton, Wyo., for appellees.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

The Denver United States National Bank appeals from a judgment denying a recovery from a United States prime contractor on an assignment of the proceeds due on a subcontract. The defendants, Asbell Brothers Construction, a partnership, and William R. Asbell and Keith V. Asbell, the individual partners,[1] contracted with the United States for the construction of certain irrigation works on the Bureau of Reclamation Eden Project near Farson, Wyoming. Howard Deal and Lewis J. Oster[2] entered into a subcontract to perform a portion of the work covered by the prime contract. Deal and Oster were without adequate finances or machinery to do the work required by the subcontract. A portion of the required machinery was purchased by conditional sales contract from Studer Tractor Equipment of Cas-

1. Herein referred to as "Asbell Brothers."

2. Herein referred to as "Deal and Oster."

per, Wyoming, and Asbell Brothers were directed to deliver to Studer the monthly payment of $2,625.00, together with interest, which was to be deducted from the monthly progress payments due on the subcontract. The rest of the necessary machinery was acquired from Studer on a rental basis. The plaintiff bank agreed to advance adequate funds to Deal and Oster to meet their operating expenses. To secure repayment of these advances, the balance of the progress payments were assigned to it, with the approval of Asbell Brothers.[3]

Deal and Oster commenced work on the subcontract in June of 1957, and their work was terminated on October 17, 1957. During the months of June, July, August, and September, 1957, the bank advanced a total of $30,000. Of this amount the bank received payments of $1,975.16 and $10,944.48 by virtue of the assignment.

■■ The bank brought this action alleging that Asbell Brothers had not made payments to the bank when they were due under the terms of the subcontract and its assignment, and had never made payment in full of the total amount earned under the subcontract. The defense was that under the terms of the subcontract [4] there was no money due Deal and Oster which was subject to the assignment, and that, after settlement of unpaid claims for labor and material furnished Deal and Oster in the performance of the subcontract, the total of the amounts paid out by Asbell Brothers exceeded the amount earned by $3,629.22. The trial court found that, in addition to the sums paid by Asbell Brothers on behalf of Deal and Oster, expenses totaling $11,409.29 were still due before any monies would be payable under the subcontract. On this basis the trial court concluded, and we think correctly so, that "The assignee-bank acquired no greater right than was possessed by its assignor, Deal and Oster, but simply stands in the shoes of the latter. In such case the Bank takes subject to all equities and defenses which could have been set up against the chose in the hands of the assignor." Under the terms of their subcontract, Deal and Oster were not entitled to the monies earned until they had paid all labor and material bills and other obligations arising from the performance thereof. Since this had not been done, the bank, as assignee, had no right to insist upon payment by Asbell Brothers. 3 Williston on Contracts § 432 (3rd Ed. 1960).

■ The bank contends that the documentary evidence produced from the

---

3. The assignment and acknowledgment by Asbell Brothers reads as follows:
 "For value received, the undersigned do hereby assign and transfer to the United States National Bank of Denver, Colorado, the first amount of any monies on every estimate received from Asbell Brothers Construction, Riverton, Wyoming, after Two Thousand Six Hundred Twenty-five Dollars ($2,625.00) plus 9.6% interest each month has been deducted by Studer Tractor and Equipment Company, Casper, Wyoming, on that certain contract referred to as 'Subcontract for use in connection with the construction of Bureau of Rec. Project # DC–4807', and dated May 22nd, 1957.
 "Dated: June 1, 1957   Deal and Oster,
 "Witnesses:   Partners
 "William A. Eustace   Howard Deal
 "Geo. J. Snyder   L. J. Oster
 "We agree to this assignment as outlined above in the name of Asbell Bros. Const. W. R. Asbell, Partner."

4. The subcontract, in part 2, provides:
 "The Subcontractor further covenants and agrees to do and comply with the following: * * *
 "(b) To pay promptly when due all labor and material bills accruing on said items of construction and to carry and pay for all insurance required by all applicable Local, State and Federal laws; to pay all taxes assessed against his materials, equipment and payroll; to obtain and pay for all required licenses, permits etc.; and to pay all other expenses arising from the performance of this subcontract.
 "(c) To furnish upon demand of the Contractor, satisfactory receipts, releases, or other evidences of payment of all claims arising from the performance of this subcontract, before any payment under this subcontract shall become due * * *."

records of the Bureau of Reclamation conclusively establishes that Deal and Oster earned a total of $51,263.54 under their subcontract, and that deduction of the sum of $45,419.87 paid out by Asbell Brothers on their behalf leaves a balance due of $5,843.73 subject to its assignment. The trial court found that the subcontractors had earned only a total of $41,790.65. This difference arises because of two segregations made by employees of the Bureau of Reclamation of items of work performed by Deal and Oster and by Asbell Brothers. The work completed according to the terms of the prime contract was itemized on a Bureau of Reclamation form, and then an employee of the Bureau indicated on the document upon which the bank relies who had performed which work by writing "Asbell" adjacent to the items which Asbell Brothers had done themselves. The other segregation was accomplished when Keith Asbell presented a carbon copy of this itemization to an employee of the Bureau who, after reference to the Bureau's field notes and records, wrote the word "Asbell" adjacent to certain items to indicate that Asbell Brothers, not Deal and Oster, had done that work. This allocation, which was made about the time the work was actually done, attributed substantially greater amounts of work to Asbell Brothers than did the accounting which the bank presented to the court. The trial court accepted the determination of the work performed by Asbell Brothers that was given to Keith Asbell, and made a finding accordingly. The findings of the trial court are not to be disturbed on appeal if they are supported by substantial evidence and are not clearly erroneous. Fed.Rules Civ.Proc. 52(a), 28 U.S.C.A.; Lindsey v. Oregon-Washington Plywood Co., 10 Cir., 287 F.2d 710; Wilsey-Bennett Trucking Co. v. Frost, 10 Cir., 275 F.2d 144; Erekson v. United States Steel Corp., 10 Cir., 260 F.2d 423; Lamb v. I. C. C., 10 Cir., 259 F.2d 358; Heldenbrand v. Stevenson, 10 Cir., 249 F.2d 424; United States v. First Sec. Bank, 10 Cir., 208 F.2d 424, 42 A.L.R.2d 951.

It appears quite clear to us that the trial court's finding that there was no money due the subcontractors which was subject to the assignment is supported by the evidence and is not clearly erroneous.

Affirmed.